[Sac. No. 3985. In Bank.—February 28, 1929.]

P. W. MICHELL et al., Respondents, v. GRASS VALLEY GOLD MINES COMPANY (a Corporation), Appellant.

E. H. Armstrong, Frank R. Wehe, Sr., and Frank R. Wehe, Jr., for Appellant.

Nilon & Nilon, for Respondents.

THE COURT.—This is an appeal from the judgment for the plaintiffs in an action in rescission.

In and prior to July, 1922, the plaintiffs W. P. Michell and W. J. Michell owned the record title to 108 acres of land in Grass Valley, Nevada County. The plaintiff Nellie Michell is the wife of the plaintiff P. W. Michell, and as such joined in a deed which conveyed certain mineral rights in the real property to the defendant. These mineral rights are claimed by the plaintiffs to be very valuable. Contiguous to plaintiffs' land or with each other are nine other parcels of land varying in size from 3.60 to 43 acres, which

were owned by various persons or corporations, all of which also are alleged to contain valuable mineral deposits. The total surface area of all of this mining property is about 268 acres.

During a number of years prior to July, 1922, a mining engineer by the name of Roy J. King had been interested in promoting the development of these mining properties and at different times had purchased options on some of the parcels in an endeavor to interest capital in the enterprise. But moneyed interests did not consider any proposition attractive until King had obtained the consent of all of the owners of the ten contiguous parcels to join their mining property into one unit. Promotion negotiations were carried on by King with the ten owners and the provisions of a promotion agreement were settled upon by the interested parties. By this agreement it was provided that a corporation to be organized in Delaware or Nevada should be formed with capital stock of 1,500,000 shares of the par value of $1 each; that the real property owners should deed to the corporation to be formed their mining rights to the land commencing downward from a plane 100 feet beneath the surface, and sufficient land in fee on which to build improvements, and a central shaft from which, by tunnels and drifts, the subsurface of the other lands would be reached and mined; that the consideration for the properties should be shares of the capital stock of the corporation to be formed in an amount fixed in accordance with values thereupon placed on the lands, the stock to be held in escrow and sold for forty cents a share. For his detailed engineering report and his services and money advanced, King was to receive 15,000 shares. A total of 343,090 shares was agreed to be issued to the property owners and King and held in escrow and sold and the proceeds of sale delivered to them. It was agreed that 300,000 additional shares should be sold at the same time at twenty cents a share to raise funds for development. Other stock was to be held for the backers and promoters and the balance as treasury stock. The share of the plaintiffs under this arrangement was to be 135,000 shares of escrowed stock, or a cash equivalent of $54,000 on sale of the stock at forty cents. Between July 13 and 21, 1922, telegrams were exchanged between King at Grass Valley and the backers, Chas. E. Knox and Harry E. Thomp-

son in New York, offering and accepting the proposition. The offer to give a six months' option to buy the stock to be escrowed at forty cents a share was also accepted, and it was agreed that the local people should direct the affairs of the corporation until the stock to be escrowed should be sold.

Articles of incorporation were filed in Nevada on July 25, 1922, and on July 26th the seven directors appointed in the articles of incorporation to act as such and duly elected met at Grass Valley. The directors included the plaintiff W. J. Michell and four of the other property owners, exclusive of the other plaintiffs herein. At that meeting the above matters were narrated and copied into the minutes of the meeting in detail and by resolution the promotion agreement of the property owners to deed their land and mineral rights in exchange for shares of the capital stock was accepted.

On July 27, 1922, the plaintiffs and the other property owners delivered deeds to the corporation and, following the advice of the corporation's attorney that a permit of the corporation commissioner was not required, certificates purporting to represent shares of stock in the corporation were issued in Grass Valley in the names of the grantors and Roy J. King, respectively, and in the amounts provided by the promotion agreement, but without a permit from the commissioner so to do. The deeds were recorded and on August 4, 1922, the holders of the certificates representing the 343,090 shares of stock deposited their certificates with the Nevada County Bank, together with a document of instructions signed by all the holders to the effect that for a period of six months the stock should be subject to sale for forty cents a share to Harry E. Thompson and Chas. E. Knox. This stock was not purchased by Thompson and Knox within the period of six months nor at all. On February 13, 1923, the directors purported to grant to one M. K. Harr of Philadelphia a twelve months' option to purchase 343,090 shares of stock at forty cents a share. Thereafter and commencing August 23, 1923, directors' meetings were held at Philadelphia. Prior to the commencement of this action the corporation sold outside of the state of California certain of its stock for the sum of $75,000, of which sum $51,000 was expended in the sinking of a

310-foot shaft and other improvements on a piece of property formerly part of the Hope Placer Mining properties, which was conveyed to the corporation in fee, and situate about 350 feet from the line of the plaintiffs' property.

On October 10, 1923, the plaintiffs discovered the mistake in the advice of the attorney that the corporation was not required to obtain a permit from the corporation commissioner in order legally to sell and issue in this state its corporate stock. On October 27, 1923, the plaintiffs notified the defendant of a rescission of the contract under which they executed and delivered to the defendant the deed conveying to the latter the mineral rights in their lands, demanded a reconveyance and offered to restore to the defendant the purported shares of stock and everything of value received by them. Upon the failure of the defendant to accede to the rescission or to comply with the demand, this action was commenced on November 3, 1923.

At or about the time the notice of rescission was given the defendant also discovered the mistake in the advice of its attorney. On December 15, 1923, the defendant filed with the commissioner of corporations an application for a permit to issue the stock contemplated by the promotion agreement to be exchanged for the real properties received by it. On February 7, 1924, all of the property owners to whom the issue of the 343,090 shares of stock was sought by the defendant to be issued, including the plaintiffs, signed and filed with the corporation commissioner, a protest objecting to the issuance of the permit. The commissioner on February 14, 1923, notified the defendant that it would appear advisable that the present litigation be determined prior to any further action by him. It therefore appears that the application for the permit and the objections thereto are still pending before the corporation commissioner.

As the basis for their notice of and action for rescission, the plaintiffs alleged fraud on the part of the defendant in issuing the stock without legal authority, alleged that the agreement of the defendant to issue valid stock to the plaintiffs was entered into without any intention of performing the same and further alleged a total failure of consideration for their deed. The trial court found that the "defendant at said Grass Valley in the State of California, on or about the 28th day of July, 1922, wrongfully, fraudulently, and

in breach and violation of its duty towards plaintiffs'' caused the certificate purporting to issue 135,000 shares of the stock of said corporation to be issued to the plaintiffs. The allegation of the plaintiffs that the defendant entered into the contract for the issuance of its stock without any intention of performing the same was found to be untrue. But the court found that the plaintiffs were entitled to rescind on the ground of failure of consideration. Judgment was entered adjudging the rescission of the purported agreement resulting from the acceptance of the terms of the promotion agreement of July, 1922, ordering the cancellation of the deed from the plaintiffs to the defendant within a certain time limit and if not so reconveyed that a commissioner appointed by the court execute the reconveyance. From this judgment the defendant corporation appeals.

It is conceded by all parties that the purported issue in Grass Valley of the 135,000 shares of stock of the defendant corporation to the plaintiffs was void. There is, however, no foundation in the record for the finding that fraud was practiced on the plaintiffs by the defendant in issuing said void stock. At the time the certificates were issued to the plaintiffs in Grass Valley, the plaintiff W. J. Michell and four of his associated land owners, having similar contracts for the exchange of their lands for stock, were directors of the defendant. As the land owning directors constituted five out of the seven directors, it must be assumed that they controlled the corporation at that time and continued to control the corporation until the election of the eastern directors to take their places at the stockholders' meeting held on August 20, 1923. The plaintiff W. J. Michell was re-elected as director at that meeting and continued thereafter to occupy that position. When we look through the form of the corporation and view the situation of its managing directors, it is readily seen that as five out of the seven directors, including the plaintiff W. J. Michell, were in charge of the affairs of the corporation at the time the alleged fraud was committed and as those five directors were land owners who were vitally interested in receiving valid stock, it would be absurd to conclude that said land owners, directors of the corporation, intended to perpetrate a fraud on themselves by directing the corporation to do so. The record is entirely lacking of any evidence upon which

the finding of fraud may be based. It is beyond question that all of the directors of the corporation, including W. J. Michell, one of the plaintiffs herein, were actuated by entire good faith in the transaction, acting, however, under the mistaken advice of their attorney that the corporation could lawfully sell and issue its stock in this state without a permit from the corporation commissioner.

The plaintiffs further contend that they were entitled to rescind the contract with the defendant corporation for the exchange of their lands for stock on the ground of failure of consideration. As this question is approached it must be assumed that the original contract between the land owners and King was legal. It was a promoters' agreement, binding upon the parties thereto, sufficient as an offer to the corporation thereafter to be formed, and binding on the corporation upon its lawful acceptance of its benefits. (*Nannizzi* v. *Caprille*, 43 Cal. App. 498 [185 Pac. 673].) It must be further assumed that the parties to the promotion agreement contemplated that they would receive valid stock of the corporation in exchange for their lands. The defendant relies on the case of *Lawrence* v. *Gayetty*, 78 Cal. 126 [12 Am. St. Rep. 29, 20 Pac. 382], approving *Hartman* v. *Reed*, 50 Cal. 485, where it was held that upon the failure of the grantee of a deed to pay the consideration for the conveyance of the title, the grantor is not entitled to rescind but is relegated to an action in damages where it appears that the contract between the parties was not made on the condition that title should revest upon failure of the grantee to perform. But that decision and others to like effect proceed upon the theory that the contract whereby the deed is accepted and recorded is valid. Here the purported acceptance of the deed of the plaintiffs by the defendant corporation would seem to be so interwoven with the illegal transactions of the defendant in Grass Valley as to make the line of cases relied upon inapplicable.

There are, however, certain outstanding features of the case which would seem to render it inequitable to affirm the rescission and order a cancellation of said deed. First, the participation of the plaintiff W. J. Michell in the enterprise from its inception, including especially his participation in the acceptance by the corporation of the terms of the promotion contract upon the issuance of stock, unlawfully, in

Grass Valley, places him *in pari delicto* with the corporation under the doctrine of the case of *Domenigoni* v. *Imperial Live Stock etc. Co.*, 189 Cal. 467 [209 Pac. 36], and no relief should be accorded him on that ground alone. Secondly, while the charge of being equally at fault may not be laid to the door of the plaintiffs P. W. Michell and his wife, nevertheless they joined with their coplaintiff in a protest against the issuance of the permit by the corporation commissioner when the defendant in good faith and with promptness after the discovery of its mistake, sought permission legally to issue its stock. Thirdly, the plaintiffs waited for more than a year before endeavoring to rescind the transaction. In the meantime the rights of third parties had intervened. The whole plan of the promotion agreement was that the land owners should unite their holdings into one mining unit to be made available to the corporation as assets and as an inducement to investors to buy the stock of the corporation. If the plan had been carried out the plaintiffs would have received $54,000 in cash for their mineral rights. It was contemplated that the stock of the corporation, except that allotted to the parties to the promotion agreement, would be sold to eastern investors, whose interest the engineer and promoter King had enlisted or was hoping to enlist in the enterprise. The fact is that stock was actually sold to eastern investors to the extent of approximately $75,000. Of this amount at least $51,000 was expended in very substantial development work on the mining property. It also appears that after the mineral rights in the lands of the plaintiffs had been conveyed to the defendant, numerous persons extended credit to the corporation in reliance upon the fact that the corporation owned the lands in question. Under these circumstances it would seem to be highly inequitable to restore the plaintiffs to their original position when the defendant and others, acting in good faith and in reliance upon the conduct of the plaintiffs, would be seriously prejudiced thereby. The plaintiffs say that they were not aware of their right to rescind until at or about the time the notice of rescission was served and that they are therefore within the rule laid down in subdivision 1 of section 1691 of the Civil Code. It may be conceded that as between the immediate parties to this action and under ordinary circumstances, the delay in serving their

notice of rescission may not be urged by the defendant against the plaintiffs. Equally it may be said that the delay under like circumstances in the application for the permit from the corporation commissioner may not be urged against the defendant by the plaintiffs. But as between the plaintiffs and others whose rights have intervened the plaintiffs may not be heard to say that they were uninformed as to a matter of law when knowledge or the means of knowledge of the true situation was presumptively possessed by them. When the rights of others have intervened, and the circumstances have so far changed that rescission may not be decreed without injury to those parties and their rights, rescission will be denied and the complaining parties left to their action at law. (*Meyers* v. *Merillion,* 118 Cal. 352, 356 [50 Pac. 662].)

We therefore determine that the conclusion of the trial court that the plaintiffs were entitled to rescind and have said deed set aside was erroneous.

The judgment is reversed.