[Civ. No. 8332. First Appellate District, Division Two.—May 24, 1932.]

HARLIE R. NORRIS COMPANY, LTD. (a Corporation), Appellant, v. H. C. LOVETT, Respondent.

C. H. Sooy for Appellant.

Fitzgerald, Abbott & Beardsley for Respondent.

STURTEVANT, J.—The plaintiff sued to recover the subscription price on a block of its stock. The defendant interposed a demurrer to plaintiff's amended complaint and the demurrer was sustained. The plaintiff declined to further amend. Judgment was entered in favor of the defendant and the plaintiff has appealed and has brought up the judgment-roll.

In its complaint the plaintiff alleged that it is and ever since the fifth day of November, 1930, has been a corporation organized under the laws of this state and having an authorized capital stock of $25,000 divided into 100 shares; that on October 28, 1930, the defendant and Harlie R. Norris executed a certain contract; that said contract provided:

"This Agreement Made and Entered Into this 28th day of October, A. D. 1930, by and between Harlie R. Norris, hereinafter known as the First Party, and H. C. Lovett, hereinafter known as the Second Party;

"Whereas, the said First Party is now and has for many years last past been in the general insurance, brokerage and agency business, and he, with others, intends to form a corporation for the purpose of carrying on such business, to be known as Harlie R. Norris Company, Ltd., and the Second Party has in connection with his business the placing of certain insurance applications;

"Now, Therefore, the parties hereto mutually covenant and agree as follows:

"The party of the first part agrees that he will carry on and manage the business contemplated by the beforementioned corporation when the same shall be formed; that he will devote all of his time to the business of said corporation save and except such time as may be necessary to fulfil his duties as Manager of the Union Mutual Insurance Company, such time, however, not to exceed two (2) days in any one week; that for such work for said contemplated corporation he is to receive from said corporation One Hundred Fifty Dollars ($150.00) per month salary, and not to exceed Fifty Dollars ($50.00) per month on account of necessary expenses of his personal solicitation of said business, including the expense of operating an automobile in said connection.

"The party of the first part further agrees that he will place no insurance of any nature or description, nor handle any brokerage or agency business except through said contemplated corporation, other than life insurance applications and brokerage in connection with and through the beforementioned Union Mutual Life Insurance Company, originating in the City and County of San Francisco.

"The second party agrees than all applications for insurance originating in connection with his business will be placed through said contemplated corporation; that he will

within Ten (10) days after the formation of said corporation subscribe for Fifty (50) shares of stock of said corporation; and to pay into the Treasury of the same, upon issuance of said shares, the sum of Five Thousand Dollars ($5000.00); that immediately upon the receipt of said shares he will transfer to the first party Twenty-five (25) shares of the same upon and without any further consideration than the covenants hereinabove set forth; that within One (1) year from the date of incorporation of said corporation, should the business of said corporation so require, he will subscribe for an additional Fifty (50) shares of the stock of said corporation, and pay into the Treasury of the same upon the issuance thereof the sum of Five Thousand Dollars ($5000.00); that immediately upon the receipt of said stock he will transfer to the party of the first part Twenty-five (25) shares of the same upon no further consideration than the covenants hereinabove set forth.

"In Witness Whereof, etc."

That immediately thereafter the defendant caused his attorneys to prepare articles of incorporation, file them, pay the fees, and that plaintiff became a corporation; that immediately thereafter the defendant applied to the commissioner of corporations for a permit to issue stock and that said permit was issued on the seventeenth day of November, 1930; that on the nineteenth day of November, 1930, the plaintiff elected to and did accept the defendant's subscription offer and tendered a certificate of said stock; that the defendant refused to accept said certificate and that defendant is indebted to plaintiff in the sum of $5,000. The plaintiff did not allege that Norris had assigned to it his interests in the contract, nor that Norris had assigned to it his established business, nor that it had employed Norris as manager, nor that the plaintiff or Norris had done or performed all acts by them to be done and performed.

The defendant demurred to the complaint on the ground that it did not state facts sufficient and also that it was ambiguous, etc., specifying eight different grounds.

■ 1. In its first point the plaintiff asserts that contracts similar to the one now before the court have been held to be not subscriptions for stock or contracts for the sale of stock within the meaning of the Corporate Securities Act (Stats. 1917, p. 673), but were to be regarded as contracts

for the benefit of a third person, that is for the contemplated corporation. It cites a number of cases, but all of those cases were decided before the enactment of the Blue Sky Law (Stats. 1913, chap. 353, p. 715), our first statute regulating these subjects. It follows that the cases cited are not authority to the effect that the contract sued upon is not to be weighed by the terms of a statute enacted subsequent to the dates of the decisions cited.

2. It is next contended by the plaintiff that the fact that the contract sounded in the future tense is not controlling. It cites and relies on *Sanders* v. *Barnaby*, 166 App. Div. 274 [151 N. Y. Supp. 580], and *Positype Corp. of America* v. *Flowers*, 36 Fed. (2d) 617. In the first case relied on the language was "will subscribe and pay"; in the second case the language of the contract was "we . . . do hereby agree with each other . . . to subscribe". However, in neither of those contracts were there any additional expressions showing, or tending to show, that a formal contract of subscription was thereafter to be executed. Nevertheless we do not consider the point as determinative of this case.

3. The next point made by the plaintiff is that it was not necessary to the validity of the contract that it be set forth in the articles of incorporation. The plaintiff cites and relies on *Horseshoe Pier Co.* v. *Sibley*, 157 Cal. 442 [108 Pac. 303], *Nannizzi* v. *Caprile*, 43 Cal. App. 498 [185 Pac. 673], and *Michell* v. *Grass Valley Gold Mines Co.*, 206 Cal. 609 [275 Pac. 418]. Those cases are not helpful. Each and all involved facts that arose long prior to the year 1925 but, by amendments to the statute (Stats. 1925, chap. 447, p. 962), very material changes were made in the law. As the statute then stood amended, by virtue of the provisions of section 3, no subscription might be taken before a permit was obtained. That restriction was modified by section 25, in which it was provided: "Neither this act nor any provision thereof shall be deemed to prohibit subscriptions for shares of a domestic corporation made prior to the incorporation thereof and set forth in the articles of incorporation. . . . " (Stats. 1925, p. 972, chap. 447.) The plaintiff assigns no other reason why the statute was not binding on it. The statute is very broad and we have no doubt that the plaintiff should have complied with its provisions.

■ 4. Finally plaintiff contends that no permit was required for this contract. The plaintiff states that it is sufficient that a permit was contemplated and that one was obtained before the certificate was tendered. The point may be conceded, but it does not help the plaintiff because, as shown in the preceding paragraph, it does not appear that, considered from any angle, the plaintiff had complied with the provisions of the Corporate Securities Act.

■ 5. The defendant makes an additional point. He says the contract offer was to subscribe "within ten days after the formation of the corporation"; that according to plaintiff's allegations the corporation was formed as early as November 5, 1930; that plaintiff did not make its tender until November 19, 1930; and that at the time of the acceptance the defendant's proposal stood revoked by the lapse of the time prescribed in his proposal. (Civ. Code, sec. 1587, subd. 2.) The point is well taken.

■ 6. The contract recites that prior to its date, Norris had for many years been engaged in a "general insurance, brokerage, and agency business"; and that he intended to form a corporation for the purpose of carrying on that business. There was no provision in the contract as to the amount of capital stock, or the number of shares of the company so to be formed. The plaintiff alleges that it was organized with a capital stock of $25,000 divided into 250 shares. As to how the total capital and number of shares was determined does not appear. It is not alleged that the plaintiff was incorporated for the purpose of conducting a "general insurance, brokerage, and agency business". The complaint is wholly silent on the subject. It should have been full and complete because it is the settled law of this state that no liability is incurred under a subscription contract unless the corporation thereafter formed is the specific corporation which was contemplated at the time of the agreement of subscription. (*Marysville E. L. & P. Co.* v. *Johnson*, 109 Cal. 192, 195 [50 Am. St. Rep. 34, 41 Pac. 1016].) For this additional reason the complaint was insufficient.

It follows that the trial court did not err in sustaining the demurrer. The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.