[Civ. No. 8073. First Appellate District, Division Two.—May 2, 1932.]

F. OLDS, Respondent, v. FRANK A. SIMMONS, Appellant.

Shortridge & McInerney, Joseph McInerney and Henry C. Clausen for Appellant.

Joseph Bien and Werner Olds for Respondent.

STURTEVANT, J.—As assignee of Leon A. Kutner, the plaintiff commenced an action against the defendant for moneys had and received. The defendant answered and a trial was had before the trial court sitting without a jury. The trial court made findings in favor of the plaintiff, and from the judgment entered thereon the defendant has appealed and has brought up a typewritten record.

Heretofore the plaintiff's assignor and the defendant executed a written instrument which is as follows:

"This agreement made and entered into this 25th day of November, 1929, by and between Frank A. Simmons, party of the first part, and Leon A. Kutner, party of the second part,

"Witnesseth

"Whereas, the party of the first part is about to form a corporation under the laws of the State of Nevada, with a capital stock of one thousand shares of no par value Class A stock and one hundred thousand shares of no par value Class B stock, the Class A stocks to have the sole voting privileges but no right to dividends or assets upon dissolu-

tion, said corporation to be formed for the purpose of commercializing a certain lotion known as Fatoph, and

"Whereas, the party of the first part is desirous of engaging the services of the party of the second part to assist him in promoting said corporation and in selling upwards of one hundred thousand dollars of its Class B capital stock,

"Now, therefore, in consideration of the premises and of the mutual covenants and agreements of the parties hereto hereinafter contained, said parties do hereby agree as follows:

"That the party of the first part upon the formation of said corporation will cause five thousand shares of said Class B capital stock to be issued to the party of the second part and in addition thereto will cause said corporation to issue to the party of the second part one-fifth of a share of Class B capital stock as a commission for each and every share of said Class B capital stock sold by the party of the second part, it being understood and agreed that the party of the first part will be the sole judge of whether or not the party of the second part has made any particular sale or sales.

"That the party of the second part will pay to the party of the first part one-half of any and all obligations contracted by the party of the first part in promoting said corporation and/or in commercializing said lotion up to the time that said corporation is financed, the party of the first part being made the sole judge of when said corporation has been financed. It is further agreed that in no event shall the party of the second part be obligated to pay in excess of the sum of five thousand dollars as his share of the above mentioned obligations which the party of the first part under the terms hereof is given the right to contract.

"That the party of the second part, upon the execution of this agreement, will pay to the party of the first part the sum of five hundred dollars, said sum being one-half of the sum heretofore paid by the party of the first part to M. Todt for an interest in said lotion and the right to commercialize same by the formation of said corporation.

"That the party of the second part will devote his entire time and attention to the promotion of said corporation and the commercialization of said lotion under the direction and

supervision of the party of the first part until the time that said corporation has become financed.

"In witness whereof, the parties hereto have hereunto set their hands the day and year first hereinabove written.

> "FRANK A. SIMMONS,
> > "Party of the First Part.
> "LEON A. KUTNER,
> > "Party of the Second Part."

It should be noted that Simmons agrees to form a corporation having 1,000 shares of class A stock and 100,000 shares of class B stock. Nothing to the contrary appearing, the entire block of stock will belong to Simmons. The inventor, Todt, will get no stock, as he has been paid $1,000 for "an interest in said lotion and the right to commercialize" it. The instrument provides that Kutner will advance moneys up to the sum of $5,000 but it is silent about the repayment of said moneys in any manner except as we shall recite. It is provided that 5,000 shares of class B stock will later be issued to Kutner, but no consideration therefor is mentioned, and the only conclusion one can draw is that the advancements, $5,000 or less, so agreed to be made by Kutner, will stand as at least a part of the consideration for the 5,000 shares which it is flatly agreed will be issued to Kutner. Of the sums agreed to be paid by Kutner the instrument further provides that $500 will be paid on the "execution of this agreement". As the "promotion of said corporation and the commercialization of said lotion" involves the rendition of many services and perhaps the expenditure of much money besides the mere matter of selling shares of stock, the instrument on its face requires that Kutner do more than pay the moneys above mentioned for the shares of stock so allotted to him.

The document also provides that Kutner "will devote his entire time and attention to the promotion of said corporation and the commercialization of said lotion" and that for sales of stock made by him he will be paid "one-fifth of a share of Class B capital stock" for each share of such stock sold by him.

In setting forth separately the two agreements in the two paragraphs immediately above, we are not to be understood as holding that the purported contract was severable. As to that we are not called upon to express any opinion.

Moreover, on the face of the instrument the parties have not attempted to state the consideration for each promise made by Kutner.

It was stipulated in open court that the corporation was never organized and that no permit was ever obtained.

On December 5, 1929, Kutner paid to Simmons $1250, and on January 4, 1930, he paid him $1500, making in all $2,750, which is the amount the trial court found to be due.

█ The defendant asserts that the evidence was insufficient to support the findings. He says the contract made no provision for a sale by the defendant and a purchase by the plaintiff's assignor of shares of the capital stock of a corporation thereafter to be formed. The point may not be sustained. The instrument is plainly to the contrary. As no permit had been obtained it was unlawful to collect any part of the $5,000. (Stats. 1925, p. 972, chap. 447, sec. 25.) If no other objection existed the findings should stand as being sustained by the evidence.

█ But the defendant next asserts that even though the document executed by the parties was illegal the plaintiff should not have been given judgment because they were *in pari delicto*. The plaintiff takes issue with the defendant in making that contention. He quotes from *Walker* v. *Harbor Realty & Dev. Corp.*, 214 Cal. 46 [3 Pac. (2d) 557]. In that case the same contention was made that this defendant now makes. The plaintiff had been sold shares in a corporation to be formed, and had paid the purchase price before a permit was issued. She was one of the incorporators, was elected a director, and met with the directors. It is clear that she assumed to do all that Kutner in writing agreed to do. But, in passing on the point, at page 558 of 3 Pac. (2d), the court said: ''No facts have been presented or offered which could bring this case within the exceptions noted in such cases as *Moore* v. *Moffatt*, 188 Cal. 1 [204 Pac. 220], *Domenigoni* v. *Imperial Live Stock Co.*, 189 Cal. 467 [209 Pac. 36], and *Michell* v. *Grass Valley Gold Mines Co.*, 206 Cal. 609 [275 Pac. 418], where rights of others than the parties to the void sale or contract were involved and the buyer had by his own conduct made himself answerable to the claims of such third parties. (See *Tatterson* v. *Kehrlein*, 88 Cal. App. 34, 51 [263 Pac. 285].) The present action involves the rights only of the parties them-

selves.'' The contention of the defendant may not be sustained.

The defendant states that the money he received was disbursed by him in due course of the business between him and the plaintiff. In his closing brief he says that, by this statement, he contends that the moneys sued for were received as voluntary contributions from Kutner after Kutner and Simmons had told their attorney not to proceed with the incorporation of the company and were used in the business of the parties. He then cites authorities to the effect that payments knowingly and voluntarily made, in the absence of fraud, mistake or duress, cannot be recovered back. (*Detroit Edison Co.* v. *Wyatt Coal Co.,* 293 Fed. 489, 494.) That rule was applicable to the facts of that case. But that case involved an executed valid contract. In the instant case the purported contract was void. It was not executed but was executory. The plaintiff's assignor received nothing and was entitled to recover the payments he had made. (*Smith* v. *Bach,* 183 Cal. 259, 263 [191 Pac. 14]; *Smith* v. *Bach,* 53 Cal. App. 63 [199 Pac. 1106]; *Smith* v. *Bach,* 54 Cal. App. 236 [201 Pac. 611]; *People* v. *Oliver,* 102 Cal. App. 29, 37 [282 Pac. 813]; *Tatterson* v. *Kehrlein,* 88 Cal. App. 34, 48 [263 Pac. 285].) For the reasons just stated the rule in the Detroit Edison case is not applicable. (13 C. J. 501.)

The defendant makes several other points in his brief. However, if we are correct in our treatment of the foregoing points, and we firmly believe we are, then it is unnecessary to take up the remaining points discussed in the brief.

We find no error in the record. The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 1, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 30, 1932.