[Civ. No. 9159. First Appellate District, Division Two.—November 29, 1933.]

L. A. WARING, Respondent, v. ISABEL V. S. PITCHER, Appellant.

B. S. Gregory for Appellant.

Hadsell, Sweet & Ingalls, Carroll Single and Stanley J. Cook for Respondent.

SPENCE, J.—Plaintiff, as assignee of J. E. Davenport, brought this action against numerous defendants to recover upon defendants' alleged liability as stockholders in a corporation known as Monterey Motor Ship Company. The cause was otherwise disposed of as to all defendants save defendant Pitcher and proceeded to trial solely against said defendant before the court sitting without a jury.

From a judgment in favor of plaintiff and against said defendant in the sum of $1,094.66 and interest, defendant appeals.

The corporation was organized in October, 1923, for the purpose of purchasing and operating a vessel to be known as the Monterey. It had an authorized capital stock of 100 shares of the par value of $500 per share. Defendant Pitcher subscribed for four of said shares. The vessel was purchased and was operated for about two years, during which time the voyages made by the vessel resulted in financial loss to the corporation. J. E. Davenport, plaintiff's assignor, had been made president and general manager of the corporation and had advanced approximately $26,000 for and on behalf of the corporation in the operation of the vessel. Davenport assigned his creditor's claim to plaintiff prior to the time this action was brought.

Appellant contends that she never became a stockholder "because of the violation of the Corporate Securities Act and therefore she has no stockholder's liability". In support of this contention appellant cites numerous authorities dealing with violations of the Corporate Securities Act, but we find none of them in point. In the instant case appellant subscribed and paid $2,000 for her four shares of stock in the proposed corporation on October 16, 1923. The corporation was not organized until October 24, 1923. On October 31, 1923, a permit to sell stock at par for cash was obtained from the corporation commission. The stock was actually delivered to appellant in December, 1923, at which time she accepted the same. She retained the certificate and acted as a stockholder until her stock was sold for delinquency on an assessment levied some time thereafter. Respondent concedes that the subscription and payment "prior to the issuance of a permit were void and could not be validated by ratification or estoppel". Under the authorities it appears entirely clear that prior to the time of receiving and accepting the certificate appellant could have demanded the return of her money. Respondent contends, however, that as the corporation was in existence when the certificate was delivered to plaintiff and held a valid permit to issue stock at that time, appellant's act of accepting and retaining the certificate had the same legal effect as a new and independent contract for the sale of

the stock as of the time of such delivery. Respondent's contention finds ample support in *Moore* v. *Moffatt*, 188 Cal. 1 [204 Pac. 220], and must be sustained. Appellant was therefore a stockholder and subject to the provisions of the law then in force relating to stockholders' liability.

■ Appellant further contends that "there is no stockholders' liability since the repeal of the constitutional provisions therefor". Reference is made to the repeal in 1930 of section 3 of article XII of the Constitution. This action was commenced on December 9, 1927, and of course the indebtedness was incurred prior to that time. It is well settled by the authorities relating to stockholders' liability, that the obligation of the stockholder to the creditor was a contractual obligation. (*Aronson & Co.* v. *Pearson,* 199 Cal. 286 [249 Pac. 188, 51 A. L. R. 1385] ; *Whittier* v. *Visscher,* 189 Cal. 450 [209 Pac. 23].) We believe that appellant's contention is fully answered in *Coombes* v. *Getz,* 285 U. S. 434 [52 Sup. Ct. 435, 76 L. Ed. 866], and the authorities cited therein.

■ The further contention is made that Davenport had no authority to borrow money for the corporation, but we are of the opinion that this contention is likewise without merit. Davenport was the president and general manager of the corporation and by resolution of the board of directors he was appointed "the agent and attorney-in-fact of this corporation for the purpose of managing and operating said vessel which this corporation might or could do . . . " The wording of this resolution is somewhat out of the ordinary, but under a reasonable construction of the general authority therein granted, we believe that Davenport had the authority to borrow money for the corporation when necessary. (*Stevens* v. *Selma Fruit Co., Inc.,* 18 Cal. App. 242 [123 Pac. 212].) ■ In the resolution Davenport was also appointed "managing owner". Appellant cites section 2389 of the Civil Code, which provides that "without special authority a ship's manager cannot borrow money . . . " This section should be read in the light of section 2070 of the Civil Code, which defines "manager" and "managing owner". We do not believe that said section 2389 has any application to the authority of one who is the president, general manager and attorney-in-fact of a corporation owning a vessel, but even if it does apply the resolution of

the board of directors was sufficient "special authority" for the purpose. ■ The further claim is made that Davenport could not legally loan money to the corporation. Appellant calls attention to the fact that Davenport was a director and that his compensation as manager depended upon the income of the corporation. She cites and relies upon the text found in 6 California Jurisprudence, page 1074, and also upon *Pacific Vinegar & Pickle Works* v. *Smith*, 145 Cal. 352 [78 Pac. 550, 104 Am. St. Rep. 42], and *Moody* v. *Shuffleton*, 203 Cal. 100 [262 Pac. 1095]. There is nothing in these authorities indicating that a director and general manager of a corporation, whose compensation as general manager is dependent upon the income of a corporation, may not advance money to said corporation provided he acts in good faith and without fraud. His actions may be subject to rigid scrutiny, but they are not *ipso facto* void. (*Merrill* v. *Normandie Corporation*, 110 Cal. App. 621 [294 Pac. 774]; *Shively* v. *Eureka Tellurium Gold Min. Co.*, 5 Cal. App. 236 [89 Pac. 1073]; *Schnittger* v. *Old Home Consolidated Min. Co.*, 144 Cal. 603 [78 Pac. 9]; 6 Cal. Jur. 1074.) Here the corporation received the benefit of the advances made by Davenport and the trial court's findings against appellant on the issues of fraud and bad faith were amply sustained by the evidence.

■ Appellant also makes the contention that the corporation's losses were due to mismanagement on the part of Davenport and that as trustee for the stockholders, Davenport did not act in the highest good faith. In arguing these points appellant states that it was "the negligence and improper conduct of Davenport that caused the loss for which he is now trying to charge this defendant". Although no direct attack is made upon the findings of the trial court to the contrary, we assume that appellant is challenging the sufficiency of the evidence to sustain these findings. We have reviewed the evidence offered by the parties, but it would serve no useful purpose to set it forth in detail here. Suffice it to say that the findings that Davenport was not in any way "negligent in the management of the corporation" and that in all of his dealings he acted "reasonably and judicially" are amply sustained.

■ Appellant also claims that "Davenport being a trustee could not use the operation of the boat for his own profit".

She cites section 2229 of the Civil Code in support of this contention. Said section, however, cannot be construed to prevent a president and general manager from recovering compensation for his services when such compensation is duly authorized by resolution of the board of directors.

It is also contended that the trial court erred in the admission of certain evidence. ■ The first assignment of error relates to the admission of the books of account of the corporation and in support of said assignment appellant cites *Chan Kiu Sing* v. *Gordon,* 171 Cal. 28 [151 Pac. 657]. It is claimed that said books of account were kept in an "irregular manner". While the books of the corporation were not kept in the more elaborate form sometimes employed, we believe that they were kept in such manner as to render them admissible under the rules set forth under the case cited. ■ The next assignment is that the trial court erred in admitting secondary evidence of certain vouchers. The record shows that during the pendency of this action these vouchers had been in the hands of the former attorneys for appellant and also in the hands of an auditor. At the time of the trial Davenport testified that they were not in his possession and the evidence showed that he was unable to find them after making search. Appellant claims that there was no "satisfactory proof" of the loss of the original vouchers, but this question of whether the proof of loss was satisfactory was a question primarily for the determination of the trial court. (10 Cal. Jur. 851.) There being some evidence in the record of the loss of the original vouchers, we cannot say that the trial court erred in admitting secondary evidence. (Code Civ. Proc., sec. 1855, subd. 1.) ■ The third assignment of error relates to the admission of what is termed the Sturrock report. Respondent argues that this report was admissible as a convenient summary of the books of account. (*Shields* v. *Rancho Buena Ventura,* 187 Cal. 569 [203 Pac. 114]; Code Civ. Proc., sec. 1855, subd. 5.) Appellant points out, however, that this report was based in part, at least, upon the "books of account of J. E. Davenport and statements submitted by him in relation to the account". Neither the books of account of Davenport nor the statements Davenport submitted to the person drawing the report appear in the record. We may assume that the admission of said report

was error, but appellant has not shown that the error was prejudicial. All the material items of said report appear to find support in the other evidence in the record and we find no contradiction of the evidence relating to said items. Under these circumstances the report merely served · as a convenient summary of the testimony before the trial court and it does not appear that the admission thereof was prejudicial to appellant.

The last contention of appellant is that the action should have been dismissed for want of diligence in prosecuting the same. The cause was tried in 1932 and within five years after the answer was filed. Appellant has not called our attention to any motion to dismiss made in the trial court, but assuming that such motion was made and denied, appellant has failed to show any abuse of discretion on the part of the trial court in denying said motion.

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 29, 1933, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 25, 1934.