[Civ. No. 13933. First Dist., Div. One. May 23, 1949.]

ROGER BOURKE, Respondent, v. ANNA FRISK, as Administratrix, etc., Appellant.

Donahue, Richards, Rowell & Gallagher and Bryant M. Bennett for Appellant.

M. F. Hallmark for Respondent.

WARD, J.—This is an appeal from an order directing defendant administratrix to pay plaintiff $4,000, plus interest and costs, as restitution of that amount which was paid deceased by plaintiff for shares of stock sold by deceased before a permit had been issued and therefore in violation of the Corporate Securities Act [Stats. 1917, p. 673; 2 Deering's Gen. Laws, Act 3814].

The complaint states two causes of action. After alleging that the defendant is the duly appointed administratrix of the deceased, W. E. Linn, and that the Oakland Stadium is and has been since February 18, 1946, a duly organized and existing corporation under the laws of the State of California, plaintiff alleged as the basis of the first cause of action, "That on or about March 10, 1946, plaintiff paid and decedent received the sum of Four Thousand ($4,000) Dollars for forty (40) shares of the capital stock of said corporation, for which a written receipt was executed from decedent to plaintiff in words and figures as follows: 'March 10, 1946. Received from Roger Bourke $4,000.00 for Speedway stock. W. E. Linn.' That plaintiff did not receive said stock or any part thereof until on or about June 1, 1946, at which time there was delivered to plaintiff a certificate for forty (40) shares of the capital stock of said Oakland Stadium, a corporation. That neither decedent nor said corporation at any time prior to May 29, 1946, had a permit from the Commissioner of Corporations of the State of California authorizing the sale or issuance of the capital stock of said corporation.

"That plaintiff, on or about the 24th day of January, 1947, presented to said Administratrix a claim for restitution of said Four Thousand ($4,000.00) Dollars referred to herein, but said Administratrix refused to allow the same and on the contrary rejected the same on the 29th day of January, 1947. That the plaintiff has previously offered and herewith offers to return to defendant said certificate of stock."

The second cause of action is in the form of a common count for money had and received and is based on the allegations made in the first count.

A demurrer was filed, one of the grounds of which was uncertainty in "That it cannot be ascertained therefrom whether the decedent or the corporation had a permit to issue the said certificate of stock on or after June, 1946." The demurrer having been overruled, defendant answered that on May 29, 1946, the Commissioner of Corporations issued a permit to

the Oakland Stadium authorizing sale and issuance of the corporation's stock; that under the terms of said permit, 40 shares were delivered to plaintiff June 1, 1946, which he accepted and retained, and that plaintiff paid $4,000 for 40 shares "in accordance with a permit issued to said Oakland Stadium."

It was stipulated that the Speedway stock referred to in the receipt was of the Oakland Stadium and that "the signature of W. E. Linn, President, is the signature of the decedent." There was no dispute as to the truth of the facts set out in the complaint. The court found "That all of the allegations set forth and contained in the complaint on file herein are true and that each and every allegation set forth and contained in the answer on file herein which is contrary or inconsistent with the allegations of said complaint are untrue."

Defendant contends on appeal that his demurrer on the ground that the complaint did not show the lack of a permit on the date of delivery of the stock was improperly overruled. He also entered special demurrers to both the first and second causes of action on the grounds of uncertainty, unintelligibility and ambiguity in that it could not be determined from the complaint whether the decedent or the corporation had a permit on June 1st. These also were overruled. Though the complaint merely states that "neither decedent nor said corporation at any time prior to May 29, 1946, had a permit from the Commissioner of Corporations of the State of California authorizing the sale or issuance of the capital stock of said corporation," it was stipulated at the trial that the permit was issued May 29, 1946. It was understood by all the parties and the court to have been in existence at the time the stock was delivered to plaintiff, June 1st. Actually, the important fact and date, as will be seen later, was that the money was taken for the shares on March 10, 1946, before a permit had been issued, and the lack of a permit on that date was alleged. The date of June 1, 1946, is the one on which the case turns only if it can be said a complete sale was made at that time, which was not true in this case. Further discussion of this point seems unnecessary. If the first cause of action is properly stated, the second, based on it in the form of a common count, was good. The demurrers were properly overruled.

The facts of the case being clear, the only vital question on appeal is whether on the basis of these facts a sale of

shares took place at any time between the plaintiff and decedent and if so was it at a time when a sale could be validly made. As pointed out in *Miller* v. *California Roofing Co.*, 55 Cal.App.2d 136 [130 P.2d 740], decided by this court upon facts very similar to those in the present case, it is the validity of the *sale* and not the validity of the shares or issuance which is the crucial question.

 The Corporate Securities Act (Stats. 1917, p. 673; 2 Deering's Gen. Laws (1937), Act 3814, § 3) provides that, "No company shall sell any security, . . . or offer for sale, negotiate for the sale of, or take subscriptions for any security of its own issue until it shall have first applied for and secured from the commissioner a permit authorizing it so to do." The definition of "company" includes "all domestic and foreign private corporations, associations, syndicates, joint stock companies, and partnerships of every kind, trustees as hereinafter defined, and also individuals as hereinafter defined." "Individual" includes "only persons selling, offering for sale, negotiating for the sale of or taking subscriptions for any security of their own issue." (*Supra*, § 2.)

The words "sold" and "issued" are not synonymous. (See §§ 16, 17.) Section 2(8) of the Corporate Securities Act provides that, " 'Sale' or 'sell' shall include every disposition, or attempt to dispose, of a security or interest in a security for value . . . 'Sale' or 'sell' shall also include a contract of sale, an exchange, an attempt to sell, an option of sale, a solicitation of a sale, subscription or an offer to sell." Section 17 provides that, "Every company which shall directly or indirectly offer for sale, or negotiate for the sale of or sell, or issue, or cause to be issued any security contrary to the provisions of this act, or of the constitution of this state, or in nonconformity with a permit of the commissioner authorizing the same . . . shall be guilty of a public offense and shall be punishable by a fine not exceeding ten thousand dollars." The receipt for the money which acknowledged the sale transaction is dated at a time when there was no permit to sell stock. The transaction of March 10, 1946 was a violation of this act. As stated in the Miller case, *supra,* where the plaintiff had also paid money for shares before a permit had been obtained for the issuance of those shares, though the shares were not issued until after a valid permit had been obtained, ". . . it is apparent that regardless of whether we consider the transaction entered into on February 18, 1938 [the date

of payment], a sale, an offer to sell, or a mere attempted subscription, and the document a mere receipt, the plaintiff having parted with and the defendant corporation having accepted the sum of $2,500 in pursuance thereof, without a permit, the defendants were guilty of a public offense. (Deering's Gen. Laws [1937], Act 3814, §§ 17 and 18.) This violation of the Corporate Securities Act rendered void the transaction consummated on February 18, 1938. . . . '. . . where a statute prohibits or attaches a penalty to the doing of an act, the act is void, and this, notwithstanding that the statute does not expressly pronounce it so, and it is immaterial whether the thing forbidden is *malum in se* or merely *malum prohibitum.*' This rule stated by our Supreme Court in the oft-cited case of *Smith* v. *Bach*, 183 Cal. 259, 262 [191 P. 14], has been adopted and consistently applied in situations involving violations of the Corporate Securities Act. [Citing cases.]'' (P. 141.)

Defendant contends that though there was no valid sale of shares on March 10, 1946 due to the lack of a permit at that time, there was a binding sale on June 1, 1946. This conclusion is arrived at on the theory of a continuing offer made by the plaintiff on March 10th when the money was paid and an ''acceptance'' by the corporation on June 1st when it issued the shares, thus forming a *new* and binding agreement on June 1st when there was a permit in existence and thus an ability to make a valid sale of validly issued shares. This contention can also be answered with the language of the court in the Miller case. ''The subsequent conduct of the parties did not give validity to the sale, because the contract of December 15, 1938 [date of delivery of shares], was connected with, in fact, grew immediately out of, the previous illegal transaction. It is well settled that: 'If an agreement grows immediately out of, or is connected with, an illegal or immoral act or agreement, a court cannot lend its aid to enforce it, though it is in fact a new agreement. If the connection between an original illegal transaction and a new promise can be traced, if the latter is connected with, and grows out of, the former, no matter how many times and in how many different forms it may be renewed, it cannot form the basis of a recovery.' (12 Am.Jur., p. 717, § 210.)'' (P. 141.) Though the plaintiff was denied recovery in the Miller case it was for the reason that he was more desirous of acquiring the shares than the corporation was of selling them and therefore, knowing there was no permit, was in pari delicto and

not entitled to the protection of the statute to which he would ordinarily be entitled. These exceptional circumstances are not present in this case. "[T]he purchaser must be equally culpable with the corporation before he will be held to be *in pari delicto.*" (*Supra*, p. 144.) There is nothing here to take the case out of the basic rule as given in the Miller case.

Appellant cites three cases in support of his "continuing offer" theory: *Moore* v. *Moffatt*, 188 Cal. 1 [204 P. 220]; *Waring* v. *Pitcher*, 135 Cal.App. 493 [27 P.2d 397]; and *Robbins* v. *Pacific Eastern Corp.*, 8 Cal.2d 241 [65 P.2d 42]. These can all be distinguished from the one here before the court.

*Moore* v. *Moffatt, supra,* was a suit by a trustee in bankruptcy to recover for the benefit of creditors the unpaid price of stock. Subsequent cases have consistently distinguished it on this ground from situations similar to those in this case. The court in *California Western Holding Co.* v. *Merrill,* 7 Cal.App.2d 131, 151-152 [46 P.2d 175], said that, "An analysis of the case of *Moore* v. *Moffatt, supra,* and of the cases which have since followed, has convinced us that the doctrine of that case is, and is intended to be, an exception to the general rule, and applies only to those situations in which a representative of creditors is attempting to recover. from parties to whom stock has been issued without full payment, or where the rights of innocent third parties intervene. It is apparent that neither of the exceptions mentioned is included in the situation here. . . . (*Walker* v. *Harbor Realty etc. Corp.*, 214 Cal. 46 [3 P.2d 557]; *Olds* v. *Simmons, supra* [123 Cal.App. 275 (11 P.2d 36)]; *Herkner* v. *Rubin, supra* [126 Cal.App. 677 (14 P.2d 1043)]; *Honn* v. *Hamer,* 81 Cal.App. 276 [253 P. 336]; *Reno* v. *American Ice Machine Co., supra* [72 Cal.App. 409 (237 P. 784)].) In the Reno case, *supra,* the court says at page 431: 'The case of *Moore* v. *Moffatt,* 188 Cal. 1 [204 P. 220], relied upon by appellant as contrary to the doctrine we have just announced does not so impress us. That was not an action between the parties to a void contract, but an action by a trustee in bankruptcy of a corporation to recover the unpaid subscription price of stock for the benefit of creditors. *That situation presents an exception to the rule above announced,* which rule is suspended in the interests of innocent third persons who have relied upon the contract.' (Italics ours.) In the Walker case, *supra,* the court says at page 48: 'No facts have been presented or offered which could bring

this case within the exceptions noted in such cases as *Moore* v. *Moffatt*, 188 Cal. 1 [204 P. 220], *Domenigoni* v. *Imperial Live Stock Co.*, 189 Cal. 467 [209 P. 36], and *Mitchell* v. *Grass Valley Gold Mines Co.*, 206 Cal. 609 [275 P. 418], where rights of others than the parties to the void sale or contract were involved and the buyer had by his own conduct made himself answerable to the claims of such third parties.... The present action involves the rights only of the parties themselves.'' Other cases distinguishing *Moore* v. *Moffatt* are *Imperial Livestock etc. Co.* v. *Tracy*, 208 Cal. 205 [281 P. 50]; *Miller* v. *California Roofing Co.*, 55 Cal.App.2d 136 [130 P.2d 740]; and *Duntley* v. *Kagarise*, 10 Cal.App.2d 394 [52 P.2d 560]. One whose own act is in effect what the statute is designed to protect innocent third parties from cannot take advantage of the protection of the statute.

The Moore case permitted recovery of the value of the stock under the theory of its being a trust fund for the benefit of creditors. The appellant argues that she as administratrix is a representative of the creditors of decedent and therefore within the exception, if any, of the Moore case. The argument has no merit here. The defendant stands in the shoes of the decedent, for no rights of innocent third parties, or creditors, have been shown to have intervened and it is as though the action involved only the rights of the original parties themselves. If defendant's reasoning here were carried to its logical conclusion it could be said that in any case where there is a refusal to give up money, however acquired, improperly or not, the refusal is for the protection of creditors and therefore justified.

In the case of *Waring* v. *Pitcher, supra,* the court held that an assignor of a creditor of the corporation could recover from a shareholder who, though having paid for stock before a permit had been obtained, accepted the stock after a permit had been issued. It was not a suit between the parties to the original stock transaction, as is this case in effect. It fell within the exception of the Moore case, recovery being for the benefit of creditors, and *Moore* v. *Moffatt* was properly relied upon by the court and made the basis of its decision. The same comments as were made with respect to *Moore* v. *Moffatt* would be pertinent in so far as this decision is concerned.

*Robbins* v. *Pacific Eastern Corp., supra,* involves a more complicated factual situation, but basically was the payment of American Company stock by the plaintiffs through their agent, American Trust Company, for stock of the Goldman

Sachs Trading Corporation, the issue of the case being where the sale took place. There was no permit for such sale and issuance by the trading corporation in California. The court held that the sale had been made in New York, that the stock issued there was valid, and that the validity of the sale in New York was not affected by prior illegal negotiations for the sale made in California. The court said that "even if it be assumed that the executory contract, so far as the seller ... is concerned was illegal, nevertheless, the performance and execution of the contract in New York, being legal there, and *being complete in themselves*, stand independently of the prior illegality." (Italics added.) (P. 277.)

The distinguishing point in this case is italicized above and is brought out further by the court on page 283 in speaking of the cases distinguishing the Moffatt case. "The cases distinguishing it, however, *are not cases where there was an independently sufficient transaction after the transaction became legal*. The doctrine of the cases referred to and quoted from *supra* is not based upon the ratification of a prior illegal contract, or upon estoppel, but upon the rule that the validity of a sale when made is not affected by a prior illegal contract to make it." (Italics added.) The court emphasizes its point by saying that perhaps it would be clearer if the plaintiff shareholders themselves had gone to New York to deliver their shares in payment at the later date instead of leaving it up to their agent, the American Trust Company, to do so, but that the effect was the same.

The line, then, between the Robbins case and the Miller case, California Western Holding Company case and this case is clear. In the former all essential transactions of the sale took place at a time and place where a valid sale could be made, and prior negotiations alone could therefore not invalidate that sale. In the latter cases money was paid, an essential part of the sale, at a time when there could be no valid sale. Such essential part being tainted with illegality infected the entire transaction and completion of the sale by issuance of the shares at a later time could not make it valid. A sale cannot be partly invalid, partly valid—it is entirely void—though a valid sale can be made after prior invalid negotiations. The factual situations in the Robbins case and the present one differ on this fundamental point.

The purpose of the Corporate Securities Act was to eliminate just such unregulated acceptance of money for corporate stock not legally issuable as is found in this case. To allow the

defendant here to retain the $4,000 received from plaintiff would be to completely disregard the public policy expressed in the act and would seriously hinder its effective enforcement.

Defendant objects to the court's findings of fact as not being sufficiently definite to support the judgment, noting that no finding was made as to the allegation in the answer that the plaintiff accepted the stock after a permit had been issued. The findings were as follows: "That all of the allegations set forth and contained in the complaint on file herein are true and that each and every allegation set forth and contained in the answer on file herein which is contrary or inconsistent with the allegations of said complaint are untrue."

Findings need not "be in any particular form" nor is extreme accuracy of statement or minuteness of detail required. Findings are sufficient if the truth or falsity of each material allegation not admitted can be demonstrated therefrom or "if they can be made certain, either by reference to the pleadings or the record. Even though a finding might have been more clearly phrased, it is sufficient if its language is clear enough to indicate what the court intended. . . . the judgment will not be set aside on appeal because of a failure to make an express finding upon an issue if a finding thereon results by necessary implication from those made." (24 Cal. Jur. §§ 200-207, p. 963.)

A complete answer to defendant's contention lies in the fact that the reporter's transcript reveals that no issues of fact were presented to the court upon which findings had to be made. The court had to decide only an issue of law, whether on the agreed facts plaintiff was entitled to recover. Findings need be made only on material issues, and stipulations were entered into on all of these by the parties. (2 Cal. Jur. 1034; *Nathan* v. *Locke*, 108 Cal.App. 158, 164 [287 P. 550, 291 P. 286].) As stated in *De Haviland* v. *Warner Bros. Pictures*, 67 Cal.App.2d 225, 238 [153 P.2d 983], ". . . no harm could have resulted from such failure [to find specifically upon the issues raised by the answer] in view of the stipulation made which covered all of the material facts upon which defendant relies."

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for rehearing was denied June 22, 1949, and appellant's petition for a hearing by the Supreme Court was denied July 21, 1949. Schauer, J., voted for a hearing.