[Civ. No. 21377.   First Dist., Div. One.   Feb. 13, 1964.]

Estate of SAM RUBEN, Deceased.   GERALDINE DENA COHEN, Plaintiff and Appellant, v. HILDA GREEN-FIELD KOENIG, Defendant and Respondent.

Lerer, Moltzen & McAteer, Lerer & Moltzen and Allan R. Moltzen for Plaintiff and Appellant.

John E. Castagnetto and Herbert Chamberlin for Defendant and Respondent.

SULLIVAN, J.—This is an appeal from an order of the probate court confirming a referee's report recommending that decedent's will dated November 27, 1942, be admitted to probate and that decedent's later will dated January 27, 1961, be refused admission to probate as a lost or destroyed will. The above order was made January 4, 1963. On the same day the court made a second order admitting the will to probate and appointing executrix. Section 1240 of the Probate Code specifies the orders in probate proceedings from which an appeal will lie. An order confirming a referee's report is not as such one of the orders so specified and as such is therefore not appealable. (Cf. *Estate of O'Dea* (1940) 15 Cal.2d 637, 638 [104 P.2d 638]; *Estate of Mohr* (1962) 208 Cal.App.2d 799, 801 [25 Cal.Rptr. 688].) We doubt that the order confirming the referee's report can be construed as either an order "admitting a will to probate" or an order "refusing to make any order" admitting a will to probate, both of which are appealable (Prob. Code, § 1240) since some further action seems required from the court after it has signified through confirmation its adoption of the findings, conclusions and recommendations of the referee. Since no appeal lies from the order confirming the referee's report, we construe the notice of appeal as intended to take an appeal from the second order admitting will to probate. (Cf. *Smith* v. *Smith* (1954) 126 Cal.App.2d 194, 195 [272 P.2d 118]; *Helfer* v. *Hubert* (1962) 208 Cal.App.2d 22, 25 [24 Cal.Rptr. 900].)

The record discloses the following facts. On November 27, 1942, decedent executed a valid, witnessed will under the provisions of which he devised and bequeathed all of his estate to respondent Hilda Koenig, a former wife of his cousin,[1] and nominated Mrs. Koenig executrix thereof.

Decedent first became acquainted with appellant Geraldine

[1] In said will decedent does not include respondent among "only known relatives" but refers to her as "my dearly esteemed friend."

Cohen in 1957 through a mutual friend. Appellant was a notary public and accountant in San Francisco. The parties thereafter saw each other socially and on business. Beginning in 1959 when decedent was employed in a liquor store near appellant's office, the parties met every day. Appellant prepared decedent's income tax returns, took care of his personal correspondence and discussed with him his investments and other business transactions. Decedent talked to her about his will on at least two occasions prior to 1961. Finally in February 1961 he told appellant he had made a new will. Appellant testified that on this occasion decedent asked her "whether I cared to be an executrix" and informed her "that he was going to leave me $2,000 in cash and the securities I helped invest in and there would be some other things, some jewelry. . . ."

In March or April 1961, sometime after 8 in the evening, decedent asked appellant to accompany him to the Day and Night Branch of the Bank of America in San Francisco so that he could put his will in his safe-deposit box there. He had with him at the time two sealed envelopes, one of which bearing the legend "Last Will and Testament of Sam Ruben" he placed in the safe-deposit box. Decedent then and there handed the other envelope to appellant with instructions to give it to Mr. Lerer, his attorney, if anything should happen to him. He told her that it contained a copy of his will.

Decedent asked appellant to accompany him to the safe-deposit box a second time. On this occasion, appellant testified, decedent took cash from the box and showed appellant "the different stocks that were there." In response to the question "did he mention his will at this time?" appellant testified "The will was in there—"

Decedent was hospitalized in Mt. Zion Hospital from July 12 until July 26, and then at Fort Miley Veterans' Hospital from August 17 until his death on October 6, 1961. Appellant visited him at the latter hospital on August 19, 1961. On this occasion decedent told her: "Be sure and give Ben [his attorney, Mr. Lerer] the envelope I gave you to put in the file, Dena, because this is a picture of my will." After decedent's death, appellant delivered the envelope which she had to Mr. Lerer who opened it in her presence and removed what purported to be a photostatic copy of a document entitled "Last Will and Testament of Sam Ruben." Appellant testified that she had never before seen either the photostat or the original.

The above mentioned photostatic copy is a single document approximately 14 inches long by 8½ inches wide and entirely typewritten except for the signature of the testator and the signatures and addresses of the attesting witnesses. The will purported to be represented by the photostat is dated January 27, 1961, bears the testator's signature at the end thereof, and the usual attestation clause together with the signatures of witnesses Josephine Meyer and George W. Wright at the bottom of the document. According to the provisions found therein, decedent revokes all former wills and codicils, nominates appellant executrix without bond, and leaves "the sum of Two Thousand Dollars ($2,000.00) and all stocks and bonds that I have purchased through Amos Schermerhorn, my broker since 1959 to my dear friend Geraldine Dena Cohen, for all the kindness she has shown to me during our friendship." In the next paragraph decedent leaves his diamond ring to one Mrs. Iva Bray and "The balance of my jewelry I bequeath to Geraldine Dena Cohen, to dispose of per my expressed wishes." He bequeaths all the residue of his estate to respondent "Hilda Greenfield Koenig, former wife of my cousin Theodore Greenfield in whose home I lived for many years."

At the hearing before the probate commissioner, both attesting witnesses testified substantially as follows: That they had visited decedent at the liquor store where he was employed; that the presence of all three of them there on the day the will in question was signed was merely a coincidence; that while Mrs. Meyer and Mr. Wright were there decedent produced a document which he said was his will and asked them if they would act as witnesses; that decedent thereupon signed the document in their presence and they in turn affixed their signatures. Each of the witnesses identified his or her signature as appearing on the photostatic copy of the instrument but each also testified that he or she did not read the will and did not know its contents.[2]

Mrs. Koenig, respondent herein, gave the following testimony at the hearing before the probate commissioner: She was the former wife of a cousin of decedent. Decedent had

[2] Mr. Wright testified on cross-examination: "Q. What did Mr. Ruben say to you after you signed it? A. 'Thank you very much.' Q. He never said anything else? A. No. Q. Did he show you the will to read? A. No. Q. Did you know the contents of that will? A. No."

Mrs. Meyer testified on cross-examination: "Q. Did you read the purported will? A. No. Q. You don't know the contents of it? A. I have no idea."

lived in her home for 25 years and after she sold it, had moved into a hotel. The parties had shared a safe-deposit box together. In September 1961, after decedent entered the Veterans' Hospital, respondent on decedent's instructions removed from the safe-deposit box both the will subsequently offered for probate by her and a power of attorney executed by decedent in her favor. The purpose in getting the latter was to enable her to sign decedent's checks. After this visit, respondent made entry into the safe-deposit box four or five times to remove certain bank books and securities of her own. She explained that prior to his illness, decedent "attended to all my accounts—and different things" but because of his illness was no longer able to do so and hence it was necessary for her to get her books and other property so that she could manage them herself. She had retired in May 1961 and was thus in a position to do so. Sometime in September 1961, she also, on decedent's instructions, removed all of his personal effects from his hotel room to her home. In accordance with decedent's instructions, respondent retained custody of decedent's 1942 will which she had removed from the safe-deposit box in September, until after decedent's death, when she turned it over to her attorney.

On November 1, 1961, respondent filed decedent's 1942 will together with her petition for the probate thereof. On November 27, 1961, appellant filed an answer and objection to such petition alleging that the 1942 will was not decedent's last will and that on January 27, 1961, decedent executed a valid last will and testament revoking all prior wills. At the same time appellant filed her petition for the probate of the 1961 will as a lost will and for issuance to her of letters testamentary thereon. On December 15, 1961, by stipulation of counsel, both petitions were ordered referred to the probate commissioner.[3] After a hearing on the matter, the report of such referee was filed in the court below on August 8, 1962. As we have stated, the referee recommended therein that appellant's petition for the probate of the 1961 will as a lost will be denied and that respondent's petition for the probate of the 1942 will be granted. The probate court there-

[3]In this connection the report of the probate commissioner states: "Both of the aforesaid Petitions came on regularly for hearing before the above entitled Court on December 15, 1961 and by stipulation of counsel the matter was referred to the undersigned as referee to hear and take evidence on the hearing of said Petitions and to make report and recommendations to the Court thereon."

after made the two orders dated January 4, 1963, heretofore referred to. This appeal followed.

Appellant contends before us that: (1) the trial court failed to find on all material issues of fact; (2) the trial court erred in concluding that the 1961 will should not be admitted to probate; and (3) the 1961 will revoked all prior wills.[4]

In support of her first contention appellant makes a bifurcated argument: First, the court below itself filed no findings of fact or conclusions of law; secondly, "[a]ssuming, *arguendo*" that the referee's recommendations may be considered as findings and conclusions, nevertheless the court failed to find on each material issue.

In contested probate matters where a jury is waived the court is required, as in civil actions, to make appropriate findings of fact on all issues presented to it. (Prob. Code, § 1230; *Estate of Pendell* (1932) 216 Cal. 384, 385-386 [14 P.2d 506]; *Estate of Rosland* (1946) 76 Cal.App.2d 709, 710 [173 P.2d 830].)[5] It is clear that in the instant case issues of fact were raised by the two petitions and the answer and objection of appellant. Since the record discloses no waiver of findings (see Code Civ. Proc., § 632), the parties were unquestionably entitled to them. (*Estate of Pendell, supra.*)

We must then inquire as to whether the court made sufficient findings of fact. As we have already stated, both petitions for probate were "ordered referred to the Probate Commissioner." The above quoted minute order does not enlighten us as to the intended purpose or scope of the reference. However the parties stipulated to the reference and neither party now raises any objection that it was not properly ordered by the court or that the matter was not properly heard by the probate commissioner. The latter officer acting pursuant to the court's order took testimony which covers 103 pages of the reporter's transcript now before us. At the conclusion of the hearing, he authored and filed with the court below a "report of referee" covering 11 pages in the

[4]For convenience and unless otherwise indicated, we will refer to decedent's will executed on November 27, 1942, as the 1942 will and decedent's will executed on January 27, 1961, as the 1961 will.

[5]Prob. Code, § 1230, in relevant part provides: "All issues of fact joined in probate proceedings must be tried in conformity with the requirements of the rules of practice in civil actions. ... If no jury is demanded, the court must try the issues joined, and sign and file its decision in writing, as provided in civil actions. ..."

clerk's transcript. Three pages of the report set forth the facts pertinent to the issues raised by both petitions for probate; seven pages discuss whether the evidence adduced at the referee's hearing satisfies the legal requirements for proving a lost or destroyed will; finally, the conclusion of the report presents the referee's recommendations that the 1942 will be admitted to probate and the 1961 will be denied probate.

Thereafter, on respondent's motion, the court made its "order confirming referee's report" and on the same day a separate order admitting the 1942 will to probate. The latter order, after referring to respondent's petition for probate, states: "On proof made to the satisfaction of the court, the court finds that all notices of the hearing have been duly given as required by law, and that the facts alleged in the petition are true, ..." It is of course settled that in a probate matter findings of fact may be included in the order or decree and need not be set forth in a separate document. (*Estate of Rosland, supra,* 76 Cal.App.2d 709, 711 and cases there collected.)

We are also of the opinion that the report of the referee contains findings of fact although they do not appear in usual judicial format. Nevertheless, "[i]t was not necessary that the facts as found should be in any particular form or follow the pleadings. If the truth or falsity of each material allegation in issue can be demonstrated from the findings, the law is complied with." (*Ready* v. *M'Donald* (1900) 128 Cal. 663, 665 [61 P. 272, 79 Am.St.Rep. 76]; see also *Bourke* v. *Frisk* (1949) 92 Cal.App.2d 23, 32 [206 P.2d 407].) Since the parties stipulated to the reference and raise no issue before us as to the powers and duties exercised by the probate commissioner in this proceeding, we need not and do not pass upon such question herein. Since he filed a report as referee we can at least assume, in the light of the present record, that he had authority to report his findings to the court. (Code Civ. Proc., § 643.) While, as noted above, the record is not clear as to whether the court intended a general or a special reference (see Code Civ. Proc., §§ 638, 639), since it apparently deemed it necessary to make an order confirming the referee's report, there is some ground for concluding that the court intended a special reference. (See *Ellsworth* v. *Ellsworth* (1954) 42 Cal.2d 719, 722-723 [269 P.2d 3].) In such event, the findings of the referee would not be binding on the court. (See *Schefski* v. *Anker* (1932) 216 Cal. 624, 627-

628 [15 P.2d 744]; *San Diego Fruit & Produce Co.* v. *Elster* (1954) 127 Cal.App.2d 80, 84 [273 P.2d 70].) Indeed respondent asserts that the report herein was only advisory and appellant does not controvert such statement. Under the circumstances, therefore, we conclude that when the court below made its order confirming the report of the referee, it in effect approved and adopted the findings of fact therein contained. (*Ellsworth* v. *Ellsworth, supra.*) We therefore have before us not only the finding made by the court but also the referee's findings which the court adopted.[6]

Findings of fact must be liberally construed and are to be resolved in favor of upholding rather than defeating the judgment. (*Johndrow* v. *Thomas* (1947) 31 Cal.2d 202, 207 [187 P.2d 681]; *Woodbine* v. *Van Horn* (1946) 29 Cal.2d 95, 109 [173 P.2d 17]; *Monell* v. *College of Physicians & Surgeons* (1961) 198 Cal.App.2d 38, 46 [17 Cal.Rptr. 744]; *Fivey* v. *Chambers* (1962) 199 Cal.App.2d 457, 465 [19 Cal. Rptr. 111]; 48 Cal.Jur.2d, p. 317.) Although the report of the referee does not separately state or denominate his findings of fact, we think it clearly shows that he found that both the 1942 will and the 1961 will had been duly executed; that the contents of the purported 1961 will had not been clearly and distinctly proved by two credible witnesses; that the existence of the purported 1961 will at the

[6]Appointment of probate commissioners by and for the Superior Court of the City and County of San Francisco is governed by Gov. Code, §§ 69897 and 69900. Section 69897 prescribes *inter alia* that every probate commissioner "shall have the powers and duties delegated to him by the appointing court, including the powers conferred on court commissioners by this title or the Code of Civil Procedure." The parties herein have not called our attention to anything in the present record or in any rule of court then in effect defining the powers and duties delegated to or exercisable by the probate commissioner acting in the instant reference. While such probate commissioner might have had the powers conferred on court commissioners by Code. Civ. Proc., § 259, such section would not appear *ex proprio vigore* to invest him with power to conduct the reference here involved. Section 259 confers power, *inter alia,* "[t]o take proof and report his conclusions thereon as to any matter of fact *other than* an issue of fact raised by the pleadings, upon which information is required by the court; . . ." (Italics added.) In the instant case the issues *were* raised by the pleadings.

Differentiated from the powers conferred by Code Civ. Proc., § 259 are the broader powers conferred by § 259a on court commissioners principally in Los Angeles County. Our attention has not been directed to any rule of the Superior Court for the City and County of San Francisco then in effect providing that court commissioners or probate commissioners therein may perform the duties prescribed by Code Civ. Proc., §259a. (See Gov. Code § 70141.5.)

testator's death had not been proved;[7] and that the 1961 will had not been fraudulently destroyed during the testator's lifetime.[8] The language of the report supportive of this construction, taken together with the referee's recommendations that the 1942 will should be admitted to probate and the 1961 will should be denied probate, can be construed as a finding against appellant on the crucial allegations of her petition for probate[9] and a finding of ultimate fact that the 1942 will and not the 1961 will was decedent's last will.

Furthermore the court's finding in its order admitting the 1942 will to probate, when construed with the referee's report which the court confirmed, statisfies us that the court found on all material issues. In its order admitting the will to probate the court found that the facts alleged in *respondent's* petition for probate were true and thus found that the 1942 will was decedent's last will. From this finding we think it can be reasonably implied that the court acting on the referee's recommendation found that the 1961 will was *not* decedent's last will and, having adopted the referee's report, that the provisions of such purported will, its existence at the testator's death, and its destruction during the testator's lifetime either fraudulently or by public calamity had not been established. As stated in *Richter* v. *Walker* (1951) 36 Cal.2d 634, 640 [226 P.2d 593]: "[W]hile full findings are required upon all material issues a judgment will not be set aside on appeal because of a failure to make an express finding upon an issue if a finding thereon, consistent with the judgment, results by necessary implication from the express findings which are made." (See also *Greenberg*

7The pertinent language of the report is as follows: "... I am satisfied from an examination of said document ... [1961 will] that Decedent executed a Will on that date, but what he did with it after that time is unknown to all of us. Only the Decedent can answer that question."

8The pertinent language of the report is as follows: "... there is no evidence to support a finding that she [respondent] fraudulently removed said purported lost will from said box and fraudulently destroyed the same."

9In her petition for probate of last will, appellant alleged and was therefore required to prove *inter alia* the following allegations: "Decedent left a will dated January 27, 1961, which will has never been revoked. Said will was in existence at the time of decedent's death, or was destroyed by public clamity [*sic*], or was destroyed fraudulently in his lifetime, without his knowledge. A full, true and correct copy of said will is attached hereto marked Exhibit 'A.' "

v. *Hastie* (1962) 202 Cal.App.2d 159, 173 [20 Cal.Rptr. 747].) Such principles are applicable here. Moreover it is to be noted that at no time did appellant interpose any objections or exceptions to the findings of either the probate commissioner or the court.

We therefore reach the crucial question on this appeal. Did the court below err in refusing to admit the 1961 will to probate as a lost will under the provisions of section 350 et seq. of the Probate Code?[10] Appellant claims that the court did, arguing (a) that the will was clearly and distinctly proved by the testimony of two credible witnesses; and (b) such will either was in existence at the testator's death or had been fraudulently destroyed in the testator's lifetime without his knowledge.

Under section 350 the requisities for proof of a lost or destroyed will are: (1) that such will be either (a) "proved to have been in existence at the time of the death of the testator" *or* (b) "shown to have been destroyed fraudulently or by public calamity in the lifetime of the testator, without his knowledge" and (2) that "its provisions are clearly and distinctly proved by at least two credible witnesses." (Prob. Code, § 350.) Destruction by public calamity is not urged in the instant matter. As noted above appellant first directs our attention to, and we accordingly consider, the second requirement of proof.

As the court said in *Estate of Camp* (1901) 134 Cal. 233, 235-236 [66 P. 227], speaking of the predecessor section of section 350: "The above section does not require that the witnesses shall reproduce the exact language of the testator, but that the 'provisions' of the will shall be 'clearly and distinctly proved.' If their testimony respecting the contents of the lost portion of the will coincides as to the provisions therein made by the testator, the court is authorized to establish such provisions as a portion of the will, even though the witnesses may differ as to their remembrance of the exact language used by the testator." (In accord: *Estate of Patterson* (1909) 155 Cal. 626, 632 [102 P. 941, 132 Am.St.Rep. 116, 18 Ann.Cas. 625, 26 L.R.A. N.S. 654].)

---

[10]Prob. Code, § 350 in relevant part provides: "No will shall be proven as a lost or destroyed will unless proved to have been in existence at the time of the death of the testator, or shown to have been destroyed fraudulently or by public calamity in the lifetime of the testator, without his knowledge; nor unless its provisions are clearly and distinctly proved by at least two credible witnesses. . . ."

In the instant case, the evidence is uncontroverted that Mrs. Meyer and Mr. Wright, the two attesting witnesses to the 1961 will, at no time had any knowledge of the *contents* of the document to which they affixed their signatures. (See footnote 2, *ante.*) The record discloses that they were the only witnesses called by appellant to prove the 1961 will. It is beyond any argument that appellant thus failed to satisfy the second requirement of the statute set forth above.

Appellant attempts to obviate this clear result by relying on *Estate of Moramarco* (1948) 86 Cal.App.2d 326 [194 P.2d 740]. There a notary public prepared and typed the will, making a carbon copy thereof. Both the notary and his wife then witnessed the will which was thereafter delivered to the testator. Upon the latter's death the original was not found and a petition was filed to probate it as a lost will. In support thereof the carbon copy was produced and identified by both attesting witnesses. While the notary testified as to the provisions of the will, his wife testified that she had no knowledge of its provisions. Upholding an order admitting the will to probate as a lost will, the court stated (p. 331): "As appellants construe section 350 it would mean that the provisions of a lost or destroyed will cannot be proved except by the testimony of two persons who have read the will and have a clear recollection of its contents. We do not doubt that this is an indispensable requirement where the proof consists wholly of the testimony of the witnesses as to their knowledge and recollection of contents of the writing. Such, however, is not the situation here. The question was whether the carbon copy that was exhibited to the witnesses was identified by them as a duplicate of the original will. If it was proved to be a true copy, the terms of the will were thereby established. The code would require in that case that the identity of the copy be proved clearly and distinctly by the testimony of two credible witnesses."

Appellant contends that the instant case is stronger than *Moramarco* because whereas in that case only an unconformed copy was admitted, here a photostat of the original was offered and whereas in that case one attesting witness could not testify either to the terms of the will or to her signature, here both witnesses could identify their signature as well as the testator's.

Such an argument affords appellant no assistance and must fail. While we have considerable doubt that the holding in *Moramarco* can be reconciled with the clear mandate of the

statute, we are not here called upon to determine a similar question. Assuming without deciding that we would follow *Moramarco* as a valid precedent, it is clearly distinguishable from the case at bench. Here *not even one* witness testified to the provisions of the will. The language used by the court in *Hull* v. *Cartin* (1940) 61 Idaho 578 [105 P.2d 196, 200-201], in commenting on an Idaho statute similar to that of California and quoted in *Estate of Edwardson* (1960) 186 Cal. App.2d 122, 131 [8 Cal.Rptr. 889] is here applicable: " 'This statute authorizing the proof of the contents of a lost will is intentionally strict and prescribes definite and certain proof that *must* be produced; the statute is clear, plain, unambiguous, and mandatory. . . .

" 'We are unable to hold that any substitution of circumstantial evidence, hearsay, . . . can be accepted in lieu of one of the required "two credible witnesses" in proof of the provisions of a lost will. . . . The difficulty of making the proofs required by the statute can not obviate the necessity of doing so.' "

In this age of the ubiquitous duplicating machine, the common photostat seems to appeal to the eye of the beholder with the hallmark of its own authenticity. However wide may be the acceptance of the copier and quite apart from the obvious risk that its sophisticated process may be used improperly, the clear mandate of the statute governing lost wills precludes it from abrogating the two-witness rule. To hold otherwise would be in effect to make the machine the witness.

In view of our foregoing conclusion it is manifest that the 1961 will was properly denied probate as a lost will. Such being the case it is actually unnecessary to dispose of appellant's second argument directed to the existence or destruction of the will. However we briefly point out that this argument too must fail. As we have already stated the referee found that the 1961 will was not fraudulently destroyed by respondent.[11] Appellant contends that this finding is without

[11]See fn. 7, *ante*. In addition the referee's report stated: "Although there is evidence that MRS. KOENIG entered the box on several occasions after her retirement and up until the date of the death of Decedent, there is no evidence to support a finding that she fraudulently removed said purported lost will from said box and fraudulently destroyed the same. It is an elementary rule of law that fraud is never presumed, and that burden of proving fraud rests upon the proponenet [*sic*] of the alleged lost will which I contend she failed to do."

any support in the evidence. Much of appellant's supporting argument would be more properly addressed to the trier of fact. Essentially it boils down to a claim that the evidence before the referee is susceptible of only two inferences—either that the will was fraudulently destroyed by respondent or that it was in existence at the testator's death.

Contrary to appellant's above claim, we find substantial evidence in the record before us which supports the referee's finding against fraudulent destruction. Records of the Bank of America, Day and Night Branch, were introduced in evidence by appellant at the hearing before the referee. These showed that between January 27, 1961, and October 6, 1961, there were several entrances into the safe-deposit box in question both by decedent and respondent Mrs. Koenig.[12] The referee could reasonably infer that the entrance recorded as being made on March 24, 1961, at 8:35 p.m. was probably the incident when appellant, as she testified, accompanied decedent and saw him deposit the envelope bearing the notation "Last Will and Testament of Sam Ruben." The above records show entrances by decedent on May 15, 1961, and June 27, 1961. The latter date would appear to be the occasion on which appellant made a second visit to the box with decedent and on which, as she testified, the "will was in there." The records introduced by appellant establish that decedent made two more entrances to the box—one on July 10 and the other on July 27. The record is barren of any evidence as to what decedent did on the July 10 visit. Appellant's witness Mrs. Bray, who accompanied decedent on the July 27 visit, testified that he then withdrew from the box his ring and his billfold but nothing else "that I know of." Nevertheless the referee could reasonably infer that on July 10 the decedent could have removed the will from the box and placed it somewhere else. It is noteworthy that no evidence was introduced of any statements of decedent made after July 10 to the effect that the will in question was still in the box.

The last entrance by decedent to the safe-deposit box was on July 27, 1961. While respondent made entry to the box on six occasions between July 27 and the date of decedent's death, she had a right to do so since she shared the box with decedent and in her testimony before the referee she gave her reasons for such visits. It was for the referee as the trier of

---

[12]While the records show that during the period decedent exchanged safe-deposit boxes, this incident is immaterial here.

fact to determine her credibility, evaluate her testimony and resolve any conflicting inferences of which it was susceptible. The referee resolved all conflicts in respondent's favor and concluded that she had not fraudulently abstracted and destroyed the will. Since, as pointed out above, the decedent could have removed the will himself on July 10, it cannot be said that the referee's finding that the 1961 will was not fraudulently destroyed is without support.

Appellant argues that if the 1961 will was not fraudulently destroyed, then it must follow that it was in existence at the time of the testator's death. While the referee's report could have framed a finding on this point in more precise language[13] nevertheless, as we have already stated, the report itself, taken together with the court's subsequent order admitting the 1942 will to probate, can be reasonably construed as containing the implied finding that the 1961 will was not in existence at the testator's death. The evidence supports such an implied finding since it establishes that the 1961 will could not be found after the testator's death and since it also establishes, under the view taken by the referee in rejecting any inference of fraudulent removal and destruction by respondent, that when last known to exist it was in the exclusive possession of the testator. Such evidence, giving rise to the inference of destruction of the document by the testator with revocatory intent, is supportive of the implied finding aforementioned. (*Estate of Johnston* (1922) 188 Cal. 336, 339-340 [206 P. 628]; *Estate of Ross* (1926) 199 Cal. 641, 646 [250 P. 676]; *Estate of Rodda* (1957) 152 Cal.App.2d 300, 303 [313 P.2d 582].)

We conclude that appellant failed herein not only to satisfy the requirement of proof as to the provisions of the last will, which alone would be enough to support denial of probate, but also failed to satisfy the requirement of proof with respect to the existence or destruction of the purported last will.

Finally we dispose of appellant's contention that the 1961 will "revoked all prior wills." Relying on section 75 of the Probate Code,[14] appellant asserts that such will con-

---

[13]See footnote 7, *ante*.

[14]Prob. Code, § 75 provides: "If, after making a will, the testator makes a second will, the destruction or other revocation of the second will does not revive the first will, unless it appears by the terms of such revocation that it was the intention to revive and give effect to the first will, or unless, after such destruction or other revocation, the first will is duly republished."

tained a revocation clause and that "there is no evidence that the will of January 27, 1961, was ever revoked." Appellant's argument must fail on either of two possible bases: Assuming, as appellant claims, that the 1961 will was *unrevoked,* in order to make any revoking clause therein effective as such, it was necessary for appellant to prove by two credible witnesses that such clause was in the will and since such clause itself cannot be effective apart from the will, it was necessary to prove by two credible witnesses the whole will. (*Estate of Thompson* (1921) 185 Cal. 763, 768-771, 777-780, 782, 786 [198 P. 795].) This appellant failed to do. Even assuming, as appellant apparently is reluctant to do, that the 1961 will was *revoked,* then the evidence of one witness as to its contents would be sufficient so as to render its revoking clause effective to work a revocation of earlier wills. (*Estate of Thompson, supra*; *Estate of Johnston, supra,* 188 Cal. 336, 342-344; *Estate of Bassett* (1925) 196 Cal. 576, 582-584 [238 P. 666].) Since appellant produced no witness to any of the contents of the original will, its provisions could have no revocatory effect.

The order is affirmed.

Bray, P. J., and Molinari, J., concurred.