[S. F. No. 14427. In Bank.—October 31, 1932.]

DAVE SCHEFSKI, Plaintiff and Appellant, v. LEWIS ANKER et al., Defendants and Appellants.

Vincent W. Hallinan and C. K. Bonestell for Plaintiff and Appellant.

James M. Hanley and Elmer Collett for Defendants and Appellants.

THE COURT.—Both plaintiff Schefski and defendant Anker appeal from a judgment in an action brought by plaintiff for the dissolution of an alleged partnership and for an accounting. The Bank of Italy was made a purely nominal defendant and does not appeal. Both appeals have been presented on one transcript.

The facts in reference to the alleged partnership are as follows: In 1926, Schefski was a contractor engaged in acting as a foreman in the construction of various kinds of buildings. Anker desired to invest his money in building operations. Negotiations between the two resulted in a written agreement dated September 23, 1926. By the terms of this agreement, Schefski and Anker agreed to co-operate in the erection of an apartment house on Clayton Street in San Francisco, the lot to be purchased by Anker and to be deeded under his name; all bank loans and all expenses to be deposited in and paid from a special account to be taken under Anker's name; both parties to draw an equal salary; all net profits to be divided equally, Anker to receive $500 for each four months his money was invested, as interest. Although challenged by appellant Anker, there can be no doubt that the parties intended to enter a partnership as to the Clayton Street property. At the time of entering into the agreement, it was intended that Anker should advance all sums necessary to erect the apartment house over and above the amount to be secured by him on a bank loan. During the construction of the Clayton Street apartment, this plan was abandoned. Anker negotiated a $16,000 bank loan and then secured a $12,500 second loan on the property. Anker advanced $9,365 of his own money, to complete the construction. The written agreement providing that Anker was to receive $500 as interest for each four months his money was invested had been entered into in the belief that Anker would advance the amount secured by the second loan. This portion of the agreement, therefore, never came into operation. Either expressly or impliedly, it was thereupon agreed that in place of the interest provided for in the written agreement Anker was to receive eight per cent on all sums advanced by him. After the Clayton Street building was constructed, it was sold for $43,000. The purchaser paid part of the purchase price by deeding to Anker a lot on Twenty-fourth

Avenue, the lot being taken in at a value of $8,500. If the lot be valued at $8,500, Schefski and Anker made a net profit of $5,135.75 on the deal. Over a period of time Anker paid to Schefski the sum of $1475. Schefski's total share of the profits on the Clayton Street deal was $2,567.87. Anker, therefore, retained $1,092.87 belonging to Schefski. This has admittedly never been paid. The Clayton Street deal is only indirectly involved in the present controversy. It is important only to show the amount retained by Anker and to fix the value of the Twenty-fourth Avenue lot at $8,500.

After the Clayton Street deal was completed, except for the payment by Anker of the above sum, the parties orally agreed to continue operations as partners in the construction of two more apartments, one on the Twenty-fourth Avenue lot and one on Lombard Street. The trial court's finding in this regard is amply supported by the record. The complaint mentions only these two properties and is silent as to the Clayton Street property. At the time the complaint was filed and at the time of trial these last two apartments had been completed, but not sold. Anker had admittedly retained all the income from the properties. During the course of the trial the attorneys for Anker stipulated, and such stipulation was entered in the minutes of the court, that as and for a complete settlement of the controversy Anker should receive all sums advanced by him, less the income received by him, and eight per cent interest, and that Schefski should be entitled to all sums received from a sale of the apartment houses over and in excess of the amounts due Anker. In other words, Anker authorized the court to enter judgment in favor of Schefski for all the net profits realized when the apartments were sold. Anker does not and, in fact, could not attack the validity of this stipulation as a valid compromise and settlement. However, there is considerable confusion in the record as to whether it was ever intended to include the profits from the Clayton Street property in the stipulation. After a careful reading of the record, we do not think it was ever intended that the profits from the Clayton Street deal should be included within the stipulation. The Clayton Street deal, as already stated, was not mentioned in the complaint. That deal was completely closed, except

for the actual division of the profits retained by Anker. We think the trial court was in error in charging Anker with all the profits from the Clayton Street deal and that, under the agreement, Anker was entitled to one-half of the profits from that deal. However, under the agreement of compromise, Schefski is entitled to all the net profits realized from a sale of the Twenty-fourth Avenue and Lombard Street apartments. After the compromise agreement was entered into, it became obvious that it was necessary to take an accounting in order to determine how much Anker had advanced in the construction of these buildings and how much he had taken in from the operation thereof. The trial court, by stipulation of the parties, and without first entering an interlocutory judgment, ordered that such an accounting be had. The entering of the interlocutory judgment was not necessarily a condition precedent, it being well settled in this state that the trial court may, whenever necessary, order an accounting, with or without the entry of an interlocutory judgment. (*Fredendall* v. *Shrader*, 45 Cal. App. 719 [188 Pac. 580]; *Putnam* v. *Superior Court*, 209 Cal. 223 [286 Pac. 425].) Over a long period of time the referee, who had been stipulated to by the parties, held numerous hearings and finally filed his report. This report was incomplete in several respects, and obviously incorrect as to others. When it was submitted to the trial court, he candidly admitted that he was unable to understand many of the entries. Additional testimony was thereupon taken by the trial judge in open court as to many of the items involved. We have carefully read this additional testimony and do not believe that it materially assists in clearing up the ambiguities and inaccuracies in the referee's report. The hearings were held at widely separated intervals, so that the record is in hopeless confusion.

Appellant Schefski bases his entire appeal on the ground that the reference in the instant case was had under subdivision 1 of section 638 of the Code of Civil Procedure, and contends that therefore, under section 644 of that code, the trial court had no authority to modify or change the findings of the referee. We find this point to be entirely without merit. The reference was clearly under subdivision 2 of section 638 of the Code of Civil Procedure, and not

under subdivision 1. (*National Brass Works* v. *Weeks,* 92 Cal. App. 318 [268 Pac. 412]; *Weavering* v. *Schneider,* 52 Cal. App. 181 [198 Pac. 418].) The trial court was well within its power in refusing to accept the referee's report and in taking additional testimony after the report was submitted.

After the court had taken the additional testimony, by stipulation the two apartments were ordered sold. Schefski purchased both properties, paying a total of $15,000 in cash into court, that sum being the amount bid by him in excess of the loans on the properties. The entire controversy now deals with the proper division of this $15,000. The trial court figured that Anker was entitled to $8,383.15 of this sum and that Schefski was entitled to the balance. The amount due Anker was computed on the basis of the sums he had advanced on the Twenty-fourth Avenue and Lombard Street properties, deducting therefrom the income he had received from the operation of these properties, and deducting all the profit on the Clayton Street deal, and allowing him eight per cent for fifteen months on the balance. This, of course, resulted in Schefski receiving all the profits from all three of the buildings. As already pointed out, under the stipulation embodying the agreement of compromise and settlement, Schefski is entitled to all the net profits from the Twenty-fourth Avenue and Lombard Street properties, but the profits from the Clayton Street property must be equally divided. If this were the only error in the record, we would be inclined to make the proper corrections in the findings and judgment, and affirm the decision. But it is not the only error. It is very difficult to ascertain what value was placed on the Twenty-fourth Avenue lot. For reasons already discussed, it is clear that this should be $8,500. The referee, the accountant, and the trial judge apparently arrived at a different value for that lot. It is impossible to ascertain the extent of the error from the record before us. Other alleged errors in reference to the period for which Anker should receive interest cannot be properly ascertained from the record before us. For these reasons, it is necessary to reverse the case in order that a proper accounting be had. This ought to be a relatively simple matter. The profit due Schefski and retained by Anker on the Clayton Street deal was $1,092.87. The ac-

counting should be limited to ascertaining the amounts advanced by Anker in the construction of the Twenty-fourth Avenue and Lombard Street apartments; deducting, with interest, one-half the profit retained by him from the Clayton Street deal, and the profits secured from the operation of the other two apartments up to the date of sale. Anker should be allowed interest on the amounts advanced by him to the date of the sale, at eight per cent. This accounting may be taken by the trial court or by a referee appointed by it for that purpose.

For the foregoing reasons, the judgment appealed from is reversed, and the case remanded to the trial court for proceedings not inconsistent with this opinion. Neither side to recover costs on this appeal.