[Civ. No. 13995. Second Dist., Div. Three. Jan. 31, 1944.]

PETROLEUM MIDWAY COMPANY (a Corporation), Appellant, v. FRED E. ZAHN et al., Respondents.

Owen E. Kupfer for Appellants.

Raphael Dechter and James E. Pawson for Respondents.

BISHOP, J. pro tem.—A judgment was entered in favor of defendant, Petroleum Production Company, without the filing of findings of fact. As there was an issue of fact submitted to the trial judge for his determination and a finding on the issue was not waived, the entry of a judgment without a written finding was unauthorized.

According to plaintiff's amended complaint, the defendants had agreed to buy from the plaintiff two producing oil wells, with accompanying lease and equipment, for the price of $40,000. Of this sum, to be paid half in cash and half by the transfer of stock, only the sum of $11,000 had been received. At the trial the plaintiff proved its case, against all but one of the defendants, sufficiently to survive the motions for nonsuits, and the defendants were engaged in the examination of one of their number as a witness, when permission was given them to put on some witnesses out of order. These proved to be four in number, and each one was permitted to give his opinion of the value of the oil property in question, apparently on the theory that that value was material to a de-

fense of failure of consideration. Without being too meticulous in the matter, it suffices to say that the value of the property, in the opinions given by these four witnesses, was somewhere near $13,000.

The midday recess was taken, following the testimony of these four expert witnesses, and at its conclusion the trial judge announced that counsel had been working on a stipulation in chambers. It was then read in open court: "It is stipulated by and between the plaintiff and the appearing defendants that an order may be made by the Court appointing a disinterested person as the Court's appraiser for the purpose of appraising and giving the fair market value of leasehold, the two wells and the equipment in the bill of sale described as of July 18, 1941.

"That in determining the value of such leasehold, wells and equipment, the appraiser shall take into consideration that the entire leasehold, including well No. 2, is subject to landowners' and overriding royalties of 22⅔ per cent and that well No. 1 is subject to an additional 3 per cent.

"That the Court shall instruct such appraiser as to the definition of fair market value as announced by the decisions of the Supreme Court of the State of California;

"That judgment shall be entered in favor of the plaintiff and against the defendant Petroleum Production Corporation only for any difference that may exist, if any, between the fair market value as determined by the Court upon said appraisal and the sum of $11,000.00 heretofore received by the plaintiff, without interest to date of judgment;

"That in the event that the fair market value of said property shall be determined to be the sum of $11,000.00 or less as of July 18, 1941, then judgment shall be entered in favor of the defendant Petroleum Production Corporation, that plaintiff takes nothing;

"That each party shall bear its own costs in this proceeding, including the cost of the appraisal, in which latter connection the plaintiff shall advance one-half thereof and the defendant Petroleum Production Company the other one-half thereof;

"That the action shall be dismissed as to all defendants with the exception of the Petroleum Production Corporation but such dismissed defendant shall not be entitled to any costs;

"That all attachments heretofore levied against the property of the Petroleum Production Corporation continues to remain in full force and effect until either: (1) Any judgment that may be rendered in favor of the plaintiff is paid and satisfied or (2) Judgment is rendered in favor of the defendant and against the plaintiff as hereinabove set forth; that the attachments levied on property of the other defendants be released; that any judgment entered in favor of the plaintiff herein shall provide for a stay of execution for a period of 90 days and during such stay of execution the defendant Petroleum Production Corporation shall be restrained from disposing of said leasehold, wells and equipment; provided, however, that such restraining order shall not prevent or preclude said Petroleum Production Company from selling oil and gas and carrying on the usual and normal business of maintaining and operating producing oil wells.

"The cross complaint of the defendant and cross-complainant Zahn against the plaintiff as cross-defendant shall be dismissed with prejudice and, as a condition to the dismissal by plaintiff against such defendant Zahn, such defendant Zahn will execute a release of any claim of damages by reason of the attachment heretofore levied in this action. [sic.] against property of the defendant Zahn.

"It is further stipulated that an order may be made forthwith by the Court directing that neither any parties to this action now any of its attorneys, agents, employees or representatives contact either directly or indirectly said appraiser; that no communications shall be had by any of the parties to this action, their attorneys, agents, or representatives with said appraiser except in the presence of the Court and both parties being represented." The parties and their counsel thereupon agreed to its terms and the trial judge stated: "It will be so ordered and judgment will be entered in accordance with the stipulation. . . . I want to thank you gentlemen for working this matter out. I assume it is worked out. At least, there will be a judgment entered."

Without any written orders or any further court proceedings the several steps recited in the stipulation were taken, and a judgment, denying the plaintiff all relief, was entered. Its recitals are as follows: "The above entitled matter came on regularly for trial in Department 'B,' Long Beach, of the above entitled court, the Honorable Leslie E. Still, Judge Presiding, on May 27th, May 28th, and June 2d, 1942; the

plaintiff and cross-defendants appearing by their attorneys, Baldwin Robertson and Owen E. Kupfer, the defendants and cross-complainant appearing by their attorneys James E. Pawson and Raphael Dechter, and evidence having been introduced by plaintiff and defendants, and it appearing that before said parties had introduced all of their evidence that a stipulation was made in open court, a copy of which is attached hereto and made a part hereof, and marked Exhibit 'A,' and such stipulation having been approved in open court by all of the parties, and likewise approved in open court by the Court; that thereafter, pursuant to said stipulation, this Court appointed F. A. Graser, a petroleum engineer and appraiser, for the purpose of making the appraisal of the fair market value of the leasehold, the two wells and the equipment, as set forth in said stipulation, and the Court having duly instructed said appraiser as to the definition of the fair market value in accordance with said stipulation and said appraiser having filed herein his report and appraisal fixing the value of the property involved in this action and set forth in said stipulation at the sum of Four Thousand Nine Hundred Twenty-three ($4,923.00) Dollars as of July 18, 1941; . . .'' Following these recitals the judgment contained the provision called for by the stipulation in the event that the value of the property was determined to be the sum of $11,000 or less.

The stipulation is ambiguous in some particulars but its general effect is clear. ██ A stipulation may lawfully limit the issues to be tried. (*Corbett* v. *Benioff* (1932), 126 Cal. App. 772, 776 [14 P.2d 1028]; *Morrow* v. *Morrow* (1940), 40 Cal.App.2d 474, 485 [105 P.2d 129]) and this one had that effect; the only issue of fact that was left for determination was the market value of the property involved. ██ The stipulation did not leave the final determination of that issue to the appraiser, however, for in its fourth paragraph we find the expression: "the fair market value as determined by the Court upon said appraisal." There may be a dispute as to what the parties meant by "upon said appraisal" (they may have meant "upon said appraisal being made" or they may have meant "based upon said appraisal") but there can be no doubt that they meant that the court was to make the determination. The absence of the words "by the court" following the word "determined" in the succeeding (fifth)

paragraph results in no embarrassing ambiguity. In each paragraph the matter to be determined is the same; that is, the fair market value of the property which defendants bought. It would be unreasonable to conclude that the determination contemplated in the fifth paragraph was to be made by an agency different from the agency (the court) specifically required to pass upon the same question by the fourth paragraph.

■ The position that the stipulation in effect provided for a reference, under subdivision 2 of section 638, Code of Civil Procedure, we find untenable. There is no suggestion that he who was to be appointed "as the Court's appraiser for the purpose of appraising and giving the fair market value" of the property, was to hear witnesses and make findings of fact as a referee would be expected to do. (Sec. 643, Code Civ. Proc.) Rather, he was to prepare himself to give his opinion as an expert witness on the fair market value of the property. But whatever his role, his conclusion would not be binding upon the court. ■ The opinion of an expert witness, of course, unless it commends itself to the mind of the trier of fact, may be rejected by him. (*Rose* v. *State of California* (1942), 19 Cal.2d 713, 733 [123 P.2d 505].) ■ Nor is the finding of a referee upon a single question of fact submitted to him binding upon the court. (*Schefski* v. *Anker* (1932), 216 Cal. 624, 628 [15 P.2d 744]; *Chiarodit* v. *Chiarodit* (1933), 218 Cal. 147, 150 [21 P.2d 562].)

■ We have recognized the possibility that the stipulation was meant to be understood as providing that the court was to base its determination upon the appraisal of the court's appraiser. This interpretation, however, would not serve to substitute the appraiser's report for the court's finding. In *McKeever* v. *Locke-Paddon Co.* (1920), 49 Cal.App. 350, 351 [193 P. 258], the parties had stipulated that the issues might be submitted to a jury for an advisory verdict, but in general form, and that the court was to accept it as the basis of its judgment. Even so, it was held, it was necessary for the court to make findings, and the judgment which was based on the jury's general verdict without findings was reversed.

■ The remarks of the trial judge at the conclusion of the trial may be interpreted as revealing his understanding at that time that findings had been rendered unnecessary;

that a judgment was authorized without them. His words were not inconsistent with the true effect of the stipulation, however, and so do not give rise to what would amount to an estoppel on the part of either party to insist that the stipulation be understood according to its terms and not according to the trial judge's possible interpretation of it.

Having determined that this was a case where a valid judgment could not be entered without the making and filing of a finding of fact, we come to the question of what action on our part is appropriate. The question is raised in our minds by the action taken by the Supreme Court in *Supple* v. *Luckenbach* (1938), 12 Cal.2d 319 [84 P.2d 52] where, in a situation similar to but not exactly like ours, instead of reversing the invalid judgment, the appeal from the judgment was dismissed. In. the Supple case findings, which were required, were, by clerical inadvertence, filed without having been signed. Almost two months later the trial judge, not a resident of the county where the case had been tried, acting under the impression that he had signed the findings, signed a judgment and it was filed with the clerk. After an appeal had been taken from this judgment, new findings were prepared, signed and filed and thereupon a new judgment was entered. A motion to dismiss the appeal was made and in determining that it should be granted the Supreme Court referred to the "practically identical" case of *Easterly* v. *Cook* (1934), 140 Cal.App. 115 [35 P.2d 164], where the trial court had on motion set aside a judgment which had been entered after the filing of unsigned findings. The Supreme Court then pointed out that the trial court in the action before it, while not striking the first judgment from the records, did sign findings and a judgment, thus treating the former one as a nullity, with the result that there was a valid judgment of record, as to which the appeal was premature. The appeal was then dismissed, not on the ground that the first judgment was a nullity, but because the "appeal was prematurely taken."

The Supple case did not evidence any disaffection with the principles and practice established by the decided cases, and we do not regard it as requiring an exception to be made to them in cases that differ from it. Our case does differ. Our judgment was not entered inadvertently, nor was it set aside by the direct or indirect action of the trial court. No

subsequent judgment was entered, so that it cannot be said that the appeal was prematurely taken. "The dismissal of an appeal is in effect an affirmance of the judgment or order appealed from." (Code Civ. Proc., sec. 955.) The only judgment in this case should be reversed, not affirmed, by the dismissal of the appeal.

 The principles and practice of the decided cases warrants our reversal of the judgment. The entry of a judgment without findings, where findings are required and not waived, is not an immaterial error in procedure. (*Holland* v. *Kelly* (1917), 177 Cal. 43, 45 [169 P. 1000]; *Estate of Pendell* (1932), 216 Cal. 384, 385 [14 P.2d 506]; *McKeever* v. *Locke-Paddon Co.*, *supra*, 49 Cal.App. 350, 351 [193 P. 258]; *Estate of Ingram* (1929), 99 Cal.App. 660, 662 [279 P. 208].) In each of the cases just cited the complication created by entering a judgment without the filing of prerequisite findings was cured by reversing the judgment on appeal. An appeal should be an appropriate remedy. The judgment appealed from would be a valid judgment, if findings had been waived, and as the judgment roll need not, and does not, reveal whether findings were or were not waived, the judgment, under many circumstances, would be immune from attack. (*Carpenter* v. *Pacific Mut. Life Ins. Co.* (1937), 10 Cal.2d 307, 326 [74 P.2d 761].) It is true that such judgments may be characterized as nullities. (*Vallejo etc. R. R. Co.* v. *Reed Orchard Co.* (1915), 169 Cal. 545, 579 [147 P. 238]; *Supple* v. *Luckenbach*, *supra*, 12 Cal.2d 319, 323 [84 P.2d 52].) However, "It has been repeatedly held that an appeal may be taken from an order or judgment notwithstanding the fact that it is void." (2 Cal.Jur. 184; and see *Ewing* v. *Richvale Land Co.* (1917), 176 Cal. 152, 153 [167 P. 876]; *Estate of Smead* (1938), 12 Cal.2d 20, 26 [82 P.2d 182]; *Ivory* v. *Superior Court* (1938), 12 Cal.2d 455, 460 [85 P.2d 894].) To conclude that we have no jurisdiction on this appeal to reverse the judgment which was entered in book 1274, page 264, on August 20, 1942, because it has not yet been rendered, in that findings have not been filed, would be to give words precedence over the ideas they are meant to convey, and to give to a form of procedure greater obeisance than to the object sought to be attained.

In reversing this judgment we have no thought that the only possible result will be the reentry of the same judgment over again. As we have noted, the trial judge is not bound

by the report of his appraiser, and it may be that when he comes to make his own finding on the issue before him he will find unacceptable the opinion of his witness, who arrived at a value considerably less than half of that determined by defendants' four expert witnesses. He may, too, desire to take steps to avoid the effect of the conversation which admittedly took place between his appraiser and Mr. Cole, an employee of the defendant Petroleum Production Company. Conversing with Mr. Cole was a plain violation of the spirit of that provision of the stipulation which agreed that the court was to make an order forbidding the employees to ''contact either directly or indirectly said appraiser,'' although the letter of the stipulation was observed by the mere making of the order.

The judgment is reversed.

Desmond, P. J., and Shinn, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied March 30, 1944. Curtis, J., and Carter, J., voted for a hearing.