[Civ. No. 4834. Fourth Dist. Aug. 6, 1954.]

SAN DIEGO FRUIT & PRODUCE COMPANY (a Corporation), Appellant, v. JACK ELSTER, Respondent.

John Gerald Driscoll, Jr., Gray, Cary, Ames & Frye and Joseph Brand Colton for Appellant.

Horton & Knox for Respondent.

BARNARD, P. J.—On April 29, 1940, these parties entered into an agreement providing that the defendant should deliver to the plaintiff all peas grown on certain land during the crop season of 1940-1941; that the plaintiff should pack and market the peas; and that plaintiff's "commission" with certain packing and shipping charges, and any advances made, should be chargeable to defendant. The agreement also provided that the plaintiff should advance to the grower up to $17,500, to cover certain items and expenses during that season; and stated that the plaintiff "now holds" the defendant's note for $17,500, secured by a certain deed of trust. On the same day, the defendant executed such a note and trust deed. On

June 18, 1940, a supplementary agreement provided for a further advance of $1,000, and another note and a second deed of trust were executed. Similar contracts, with three other notes and trust deeds, covering the 1941-1942, 1942-1943, and 1943-1944 crop seasons, were later executed.

On August 21, 1942, the plaintiff presented to the defendant, and the parties signed, an agreement (Exhibit No. 2) purporting to be an account stated, and stating only that a balance of $16,584.27 was due to the plaintiff on the 1940-1941 season and $484.29 on the 1941-1942 season. Purported statements of account for the respective years were belatedly furnished the defendant after the close of each season.

This action was brought on March 27, 1945, but was not tried until May, 1951. The complaint, in separate causes of action, alleged the execution of these five notes and deeds of trust. The prayer was for judgment for $15,584.27 on the first note, $1,000 on the second, $484.29 on the third, $10,251.46 on the fourth and $6,557.49 on the fifth, with interest, and for a foreclosure and sale under the trust deeds.

The defendant filed an answer, counterclaim and cross-complaint alleging misrepresentation and fraud on the part of the plaintiff. It was further alleged, among other things, that the plaintiff failed to keep the records required by law; that it misrepresented the facts with respect to the returns from sales, failed to account for all the produce received, and so kept its records that the amount of produce taken and the true returns therefrom could not be ascertained; that it charged commissions and made other charges in excess of those to which it was entitled; and that the purported accounts furnished from time to time were inaccurate and incorrect. The prayer was for a full and complete accounting as to all of these transactions, and for judgment awarding the defendant the relief to which he was entitled.

Prior to the trial, a referee was appointed to determine certain "factual matters . . . insofar as possible." The referee filed a report, which was objected to by the defendant. In a memorandum opinion the court pointed out that all records in connection with these transactions were kept exclusively by the plaintiff; that the referee did not hold any hearings or allow the defendant to present any evidence; that the court "therefore proceeded to hear evidence and make an accounting between the parties"; and that the court had given due consideration to all the evidence, including the findings of the referee.

The court found, among other things, that while the plaintiff

was not guilty of fraud, it did fail to keep the records required by law; that it is impossible from the records it kept to ascertain the actual amount of produce it received; that the accounts it furnished from time to time were inaccurate, omitted items by mistake or error, and did not correctly set forth all of the credits to which defendant was entitled; that Exhibit No. 2 was executed by defendant in reliance upon plaintiff's representation that full and accurate accounts had been rendered for the crop years of 1940-1941 and 1941-1942; that defendant would not have signed that document had he been advised of the errors, omissions and miscalculations in the previous accounts; that these errors and omissions were not within the contemplation of the parties at the time Exhibit No. 2 was signed; that Exhibit No. 2 does not constitute an account stated as to those items; that in order to truly determine the account as between the parties it was necessary to correct the errors, omissions and miscalculations made by the plaintiffs in the accounts it rendered to the defendant; that the plaintiff has failed to account to the defendant for all peas actually delivered to it by the defendant; that in this connection the defendant is entitled to an additional credit of $3,406 for the 1940-1941 season, of $10,800 for the 1941-1942 season, of $1,978 for the 1942-1943 season, and of $1,365 for the 1943-1944 season; and that the defendant is entitled to a credit of $4,817.75 in connection with packing charges for certain peas which were taken directly from the field and shipped without being processed or packed in the manner contemplated by the agreements.

It was further found that the defendant was entitled to certain credits which are not here questioned; that the defendant is entitled to a credit of $1,177.31 because the plaintiff had charged a commission on the cost of certain ''top-ice'' to which it was not entitled; that the defendant is entitled to have the allowed credits applied on the amounts due to plaintiff as of the dates of the respective statements rendered, these being the dates from which interest was claimed on the various notes; that the matters contained in the report of the referee are not true except insofar as they are consistent with these findings; and that the defendant relied solely on the representations and accounts made by the plaintiff, and did not discover the inaccuracy in those accounts until after this action was filed. It was further found that the notes and deeds of trust were executed contemporaneously with the other agreements, that all must be construed together, and that the relationship

between the parties was that of commission merchant and grower-consignor. After finding the amounts otherwise due the plaintiff, and applying the credits allowed the defendant, it was finally found that nothing was due to the plaintiff and that the defendant was entitled to a judgment for $474.31. The plaintiff has appealed from the judgment which followed.

With the exceptions hereafter noted, no contention is made that the findings allowing credits to the defendant are not supported by the evidence. It is first contended that the agreement dated August 21, 1942 (Exhibit No. 2), constituted an account stated which was conclusive up to that time, and that the court was not justified in taking further evidence with respect to the crop seasons of 1940-1941 and 1941-1942. While it is conceded that this document would not be controlling if the court's findings with respect thereto were supported by the evidence, it is argued that they are not so supported.

The defendant testified that two of the plaintiff's officers brought this document to his house. When asked what, if anything, they said just before he signed this agreement he replied:

"I was complaining, 'Why don't I get my statement from the year before?' and he say, 'There is some accounting and everything.' Finally, August or July, the last of July, I was indebted, I had to pay a lot of bills. He comes now and say, 'We can have everything ready today. Now, you sign this, and I will give you the check and that is subject to a final statement——' and that is why I signed it."

He further testified that they told him that this was "just temporary." The accounts previously rendered were also in evidence. While the testimony shows a representation that this document was subject to a final statement, it also shows a representation that everything was ready, and is sufficient to show a representation that a full and accurate account had been or would be made. If the first of these findings is not supported, in a technical sense, the other findings in this connection are sufficiently supported to justify the court's action in this equity case. ▮ The evidence indicates that the defendant, needing the check offered and relying on what he was told, mistakenly accepted the proffered document which did not reflect the true situation, and that an undue advantage was taken of him. Under somewhat similar circumstances the court, in *Meyers* v. *Texas Co.*, 6 Cal.2d 610 [59 P.2d 132], said:

"Obviously, therefore, it is the theory of the complaint and the findings that the defendant concealed facts from the plain-

tiffs and induced plaintiffs, by its concealment and representations, to accept statements which were not true. It is a rule well recognized that, where the account has been accepted as the result of any mistake or fraud or undue advantage, a court of equity will not suffer it to defeat the rights of the innocent party, but will allow it to be opened and examined.''

It is next contended that the court erred in disregarding the report of the referee. It is argued that the reference here was not made by agreement of the parties, and that under section 645 of the Code of Civil Procedure the finding of the referee has the effect of a special verdict. ■ Ordinarily, a jury's verdict is only advisory in an equity case. There is a distinction between the effect of the finding of a referee, where the reference is general and where it is merely special. ■ Where it is general the finding is conclusive. (*Lewis* v. *Grunberg*, 205 Cal. 158 [270 P. 181] ; Code Civ. Proc., § 644.) This distinction is recognized in section 639 covering a reference made without the consent of both parties, and providing that the court may either direct the referee to hear and decide the whole issue or merely to ''report upon any specific question of fact involved.'' In *Schefski* v. *Anker*, 216 Cal. 624 [15 P.2d 744], the referee had been stipulated to by the parties but his report was incomplete in several respects and obviously incorrect as to others. The court stated that he was unable to understand many of the entries and took additional evidence as to many of the items. It was contended that the reference was made under subdivision 1 of section 638, and that under 644 the court could not modify or change the referee's findings. It was held that this contention was without merit and that the referee was appointed under subdivision 2 of section 638. The same principles are applicable here.

■ The reference here was not a general one directing the referee to decide the whole issue, but was one directing the referee to find on certain specific questions involved. In a memorandum given to the referee by the defendant he was asked to determine, with respect to peas grown in the 1940-1941 season, seven specific facts. These were the type of package shipped, the average net weight per package, the cullage or shrinkage reasonably to be expected, the average net return during the season ''per pound of peas accounted for,'' whether or not any ''ring-face'' packages were shipped that year, whether or not the defendant was credited with ''top-ice'' charges made on f.o.b. sales, and the identity of the purchaser of these peas with special reference to the

number of sales made through a certain firm claimed to be a subsidiary of the plaintiff. (See Agr. Code, § 1271.) Similar questions were submitted for the other three seasons, with additions not material here. While it was stated in the memorandum that the defendant was contending that about 75 tons of peas were not accounted for during this season, the referee was not asked to make a finding in that regard. The referee's report stated that the identity of purchasers "was not determined," and further stated that "The records available for the 1940-1941 season appears to refute the contention" that 75 tons of peas were not accounted for.

When the report of the referee came up at the trial the court stated that he could not consider it in the same light as findings of fact made by the court because it contained "a lot of findings in here that are not facts at all," and because he had never submitted any written order to the referee as to what he should find on. It was then pointed out that the court had ordered that the referee should find on the issues to be agreed upon by counsel, and that counsel had made no such agreement. Plaintiff's counsel stated that he had never seen the memorandum until that morning. The court then asked whether they wanted him to go into the matter or wanted it resubmitted to the referee for further findings. The attorney for the defendant stated that he would prefer, in view of the situation, to go ahead and present evidence on anything that the referee had failed to find on. When asked if there was anything that counsel wanted to ask, plaintiff's counsel replied. "Nothing further." A little later the court stated that he was going to allow either side to introduce whatever it desired other than what was in the referee's report. The referee's report did not include facts which would have been sufficient for a decision of the case. The evidence showed that the plaintiff had not kept the records required by section 1271 of the Agricultural Code, that the referee had based his report entirely on the plaintiff's records and information furnished him by the plaintiff, and that those records were incomplete. In view of the situation disclosed by the record, and under the authorities cited, it clearly appears that the court was justified in not accepting the referee's report as final and in taking further evidence to bring out and determine the actual facts.

It is next contended that the court erroneously allowed the defendant a credit of $1,177.31 representing commissions charged on the cost of "top-ice." It is argued that under

the contracts the plaintiff was entitled to a commission on the "gross of all sales," whether they were f.o.b. sales or sales in the delivered markets, and that the cost of the "top-ice" was a part of the gross sales price. The court interpreted the phrase "gross of all sales" as meaning the amount actually received for the sale of the produce, and as not including any part of the shipping expense which was paid by the purchaser in accordance with the usual custom of the trade. While the contract here called for a commission on the gross of all sales, without mentioning f.o.b. sales, the situation in this regard is the same as that involved in the case of *Swerdfeger v. United Accept. Corp.*, 9 Cal.App.2d 590 [50 P.2d 818]. The amounts paid for "top-ice" were not a part of the purchase price paid for the produce, but were amounts paid by the purchaser as an item of shipping expense which was properly chargeable to him.

It is next contended that the court erroneously allowed the defendant credit for $4,817.75, thereby disallowing certain packing charges made by the plaintiff during the 1943-1944 crop season. ■ This involves some peas that were dumped into lettuce crates in the field and hauled to the Los Angeles market. It is argued that the contract authorized a charge for packing in any "container," that a lettuce crate is a container, and that the verb "pack" means merely to put something in a box ready for transportation. The contract provided for a certain packing charge "per hamper or other bushel container packed out." The words "packed out," as there used, obviously meant something other than merely placing the produce in a box in the field. The evidence was that the packing process contemplated by the parties consisted of hauling the peas to the packing shed, grading and sorting them, putting them through a washer for cleaning, placing and arranging them in containers and then running them through a cold water bath and icing them, and that it is not customary to ship peas in lettuce crates. The evidence supports the court's finding that these peas were not processed or packed in the manner contemplated by the contract.

■ It is next contended that the court erroneously allowed the defendant interest on unliquidated cross-demands. It is argued that the court gave a retroactive effect to the credits it allowed defendant and thus, in effect, allowed him interest from the date of the transactions upon which the credits were based, instead of from the date of the judgment.

Reliance is placed on such cases as *Lineman* v. *Schmid,* 32 Cal.2d 204 [195 P.2d 408, 4 A.L.R.2d 1380] and *Williams* v. *Flinn & Treacy,* 61 Cal.App. 352 [214 P. 1024], where it was held that interest is not allowable where the amount of damages remains uncertain until fixed by a judgment. No damages are here involved, and the principles applied in *Hansen* v. *Covell,* 218 Cal. 622 [24 P.2d 772, 89 A.L.R. 670], are applicable. It was there said:

"Where, therefore, in cases such as here presented, the deduction is for defective workmanship, or is otherwise of a character such as to constitute payment to the contractor, and on the theory that the contractor is entitled to interest only on such amount of the use of which he has been deprived during the period of default, the court may properly allow interest only on the balance found to be due after deduction of such offsets and payments."

The credits allowed were actually due the defendant at the times the yearly statements were furnished, and the court properly credited them, as of those dates, as an offset to the amounts he then owed to the plaintiff. While the effect of this was to reduce the amounts upon which the plaintiff was entitled to interest, no interest was thereby allowed to the defendant.

The final contention is that the court erroneously denied the plaintiff interest which the defendant agreed to pay. It is argued that although the notes provided for interest from their respective dates, the court allowed interest only from the dates of the statements furnished at the end of each crop season. The amounts represented by the notes were not advanced at the time the notes were given. They were advanced at various times during the respective years, and the credits allowed defendant were also applicable at different times within those years. No one could have known what amounts were subject to interest until the statements were prepared. In any event, the plaintiff's complaint asked only for interest from the dates of the several statements, and this was allowed by the court.

The evidence supports the findings complained of; those findings are just and equitable under the circumstances disclosed by the record; and no reversible error appears.

The judgment is affirmed.

Mussell, J., concurred.