**RODDIS PANEL & DOOR COMPANY,**
a corporation, Plaintiff,

v.

**CECIL'S, Incorporated, a corporation, and National Surety Corporation, a corporation, Defendants.**

Civ. A. 1815.

United States District Court
W. D. South Carolina,
Spartanburg Division.

Nov. 15, 1956.

Carlisle, Brown & Carlisle, J. Hertz Brown, Spartanburg, S. C., for plaintiff.

Means & Browne, T. Sam Means, Jr., Spartanburg, S. C., for defendants.

WYCHE, Chief Judge.

The plaintiff Roddis Panel & Door Company brought this action against the defendant Cecil's, Incorporated, seeking to recover an unpaid balance of Six Thousand, Four Hundred, Thirty One and 44/100 ($6,431.44) Dollars, on an account for merchandise sold by plaintiff to defendant from June to September, 1954, together with interest. National Surety Corporation, surety for Cecil's Incorporated on certain construction bonds, was later made a defendant.

Defendant Cecil's Incorporated answered, denying only liability for interest, and asserting a counterclaim in the amount of Three Thousand ($3,000) Dollars, for alleged breach of warranty of merchandise sold by plaintiff to defendant on other contracts during the year 1953. More particularly, plaintiff had sold defendant some 700 doors for installation in a housing project at New Bern, North Carolina, and several months after the doors had been installed a number of them became warped and unfit for use. While the action was pending, defendant replaced 104 of the doors on demand of the Housing Authority.

In the course of the litigation and after such replacement, summary judgment was granted in favor of plaintiff against defendant for the undisputed portion of plaintiff's claim in the sum of Three Thousand, Nine Hundred, Ninety Nine and 14/100 ($3,999.14) Dollars, which defendant paid on July 20, 1956, with interest on the judgment in the sum of Sixteen and 50/100 ($16.50) Dollars, leaving in dispute the sum of Two Thousand, Four Hundred, Thirty Two and 30/100 ($2,432.30) Dollars, and interest.

In compliance with Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A., I find the facts specially and state my conclusions of law thereon, in the above cause, as follows:

### Findings of Fact

The merchandise sold by plaintiff to defendant upon which the claim of plaintiff's complaint is based consisted of building material used in the construction of several schools in South Carolina and Georgia. The defendant National Surety Corporation was surety for Cecil's Incorporated, on these school construction jobs, and it appears from the record that the surety is jointly liable with its co-defendant for any amount adjudged to be due the plaintiff. The transaction out of which the counterclaim

of defendant Cecil's Incorporated arose is a separate transaction unrelated to and unconnected with the claim set out in the complaint.

There is no substantial dispute concerning the facts, except for the cause of the warping of the doors. Plaintiff sold its products under the trade-name "Roddiscraft". Certain negotiations took place between plaintiff and defendant leading up to the submission by plaintiff to defendant of an offer to sell defendant a certain type of door, a sample of which accompanied the offer. This offer was made on August 7, 1953, and was also accompanied by a sketch showing construction, two catalogs with descriptions therein of the doors being sold, and a folder, descriptive of similar doors, on the back of which was printed the warranty of the manufacturer effective for a period of one year, stated to be adopted by plaintiff and extended for an additional period of a year. The catalogs were not put in evidence and there is, therefore, no contention that the doors did not come up to the descriptions represented by the catalogs.

The wording of the guaranty was as follows: "Roddiscraft Doors are Guaranteed for 2 Years. The Standard Door Guarantee of the National Woodwork Manufacturers Association listed below is the basis for the Roddiscraft two-year guarantee. While the NWMA guarantee covers one year, the Roddiscraft guarantee covers a two-year period. The Roddis Plywood Corporation is a member of this organization.

"All doors produced by members of the National Woodwork Manufacturers Association, Inc., are guaranteed by the manufacturer for one year from date of shipment by the manufacturer to be of good material and workmanship, free from defects which render them unserviceable or unfit for the use for which they were manufactured. Natural variation in the color or texture of the wood are not to be considered as defects.

"Doors must be accorded reasonable treatment by the purchaser. Doors must be stored or hung only in dry buildings and never in damp, moist or freshly plastered areas. Doors must not be subjected to abnormal heat, dryness or humidity. The utility or structural strength of the door must not be impaired in the fitting of the door, the application of the hardware, or cutting and altering the door for lights, louvres, panels and any other special details. Immediately after fitting, the entire door including top and bottom edges must be painted, varnished or sealed to prevent undue absorption of moisture. The manufacturer will not assume responsibility for doors which become defective because of failure to follow the above recommendations.

"A warp or twist of not to exceed ¼ inch shall not be considered a defect.

"Doors must be inspected upon arrival for visible defects and all claims or complaints based thereon must be filed immediately and before the doors are hung and before the first coat of painter's finish is applied.

"The manufacturer agrees to repair, or replace in the white, unfitted and without charge, any door found to be defective within the meaning of this guarantee.

"Doors must not be repaired or replaced without first obtaining the consent of the manufacturer."

Along with the foregoing warranty the folder printed an "Interpretation of Standard Door Guarantee", which defined certain words in the warranty dealing largely with warping or twisting.

The doors were shipped sometime in October, 1953, and were stored in a warehouse belonging to Cecil's Incorporated in New Bern, North Carolina, for several months. Their installation on the project was completed in April or May, 1954. A few doors warped soon thereafter, but were replaced by defendant without complaint to or demand on plaintiff. No complaint of warping was made by the Housing Authority until February 8, 1955, when I. I. Blanford, Executive Director of the Housing Authority, wrote defendant a letter con-

taining a list of 97 doors which were "so badly warped that we believe it is going to be necessary for you to replace every one of them". Mr. Blanford suggested no cause for the warping. Installation of the doors had been completed some seven or eight months before the making of the complaint.

Correspondence between the plaintiff and the defendant followed, and several visits were made to New Bern by representatives of plaintiff and of the manufacturer of the doors and the doors were inspected. Several possible causes of the warping were suggested by the different parties. On June 4, 1955, Mr. Blanford wrote another letter to Cecil's Incorporated listing 55 additional doors that had become warped and on June 23, 1955, he wrote again listing 104 doors including 4 doors not previously listed. Altogether the various reports made by Mr. Blanford included a total of 156 doors that had warped. Of these, the 104 listed in the letter of June 23, were replaced by defendant in December, 1955.

It is undisputed that early in June the parties agreed to a waiting period to see if the warping of the doors would be corrected naturally by the end of the summer.

Defendant purchased the 104 new doors at a cost of $643. It later sold the old doors for $1.60 each, or a total of $166.40, thereby reducing the cost of the new doors to $476.68.

The cause of the warping of the doors is surmise and conjecture, but the fact of the warping of the 104 doors that were replaced is not in controversy.

Conclusions of Law

The case presents four questions: (1) What was the warranty, (2) Was the warranty breached, (3) If so, what is the measure of damages, and (4) Whether the plaintiff is entitled to interest.

In its answer pleading its counterclaim, defendant alleges that "plaintiff warranted to the defendant that the said doors were suitable and proper for such installation and would not warp." No written warranty in the foregoing words was introduced and no oral proof to that effect was offered. The evidence offered by defendant included the letter written by plaintiff on August 7, 1953, setting out its initial offer to sell, and the folder which accompanied that letter giving the manufacturer's warranty which plaintiff adopted. The letter stated: "The Gum door which we have submitted for approval and the doors which we would propose to furnish on the job would be manufactured by the Savannah Door Company of Savannah, Georgia, and guaranteed by the Roddis Company as their distributor."

The manufacturer's warranty was that quoted above from the folder which accompanied plaintiff's letter.

The transaction included certain elements of sale by sample, sale by description, and sale of a product under a trade-name, in all of which certain special rules apply relating to implied warranties.

"In a contract to sell, or a sale, by sample, it is generally recognized that there is a warranty that the bulk of the commodity will correspond with the sample exhibited." 46 Amer.Jur., § 362. There is no contention that the doors failed in this respect.

"It seems to be generally held that where an article is sold by a descriptive name or by description, that is, if justifiably relied on by the buyer, a warranty that the article corresponds with the descriptive name or description." Id. § 328. There is no contention here that the doors did not come up to description. The descriptive catalogs are not in evidence.

"It is a well-settled rule of common law that in a sale of a known, described, and definite article, there is no warranty of fitness for a particular purpose. Moreover, the Uniform Sales Act provides that 'in the case of a contract to sell of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose.' This, it has been stated, is a substantial restatement of the

foregoing common-law rule." Id. § 351. The sale was of a described article under a trade name.

Neither of the parties contends that an implied warranty applies.

Defendant has argued that the plaintiff's warranty is contained in the letter of August 7, 1953, and not in the catalogs of Roddis which were enclosed with the letter. The letter merely says that the doors would be "guaranteed by the Roddis Company". If the letter must stand alone, the content and substance of the warranty is lacking and the only warranties which could apply would be those, if any, implied under the laws of North Carolina, under the circumstances shown by the proof, the sale having been made in North Carolina.

Defendant introduced the folder which accompanied plaintiff's letter and it came into the proof without restriction, showing the written warranty which plaintiff concedes it is bound by. I have no alternative but to conclude that the evidence has established the manufacturer's warranty as the contract between the parties and that its legal effect determines the rights and obligations of the parties.

■ The express warranty of "good material and workmanship, free from defects which render them (the doors) unserviceable or unfit for the use for which they are intended," is restricted to material and workmanship, and the burden would be on defendant to prove breach of such warranty, which it has not done, since the cause of the warping has been left to conjecture and surmise.

But plaintiff did not content itself with the foregoing warranty, but gave special and considerable attention to the matter of "warping or twisting". Certain causes of defectiveness are stated followed by the statement: "The manufacturer will not assume responsibility for doors which become defective from these causes". It is plain from the definitions accompanying the warranty and the testimony of the witnesses that warping or twisting, as defined, was considered to render a door "defective".

■■ The maxim *expressio unius est exclusio alterius* permits the holding that when the warranty excluded responsibility for warping "from these causes," it implied responsibility for warping from other causes. The maxim has been criticised as "not of universal, but of limited, use and application * * * applicable only under certain conditions * * * subject to exceptions, and requires great caution in its application." 50 Amer.Jur., § 245. Its application is not confined to statutory construction, but includes contracts generally. I think the maxim is applicable in the present case, since otherwise the extension of the manufacturer's warranty over a period of two years would be of slight advantage to a buyer who would be required to connect warping which occurred toward the end of the two-year period with circumstances of manufacture two years or more before altogether unknown to the buyer.

■ The result would be an implied general warranty against warping except from the stated causes, but this warranty would be implied by the contract of warranty and not by law. I think this is the correct interpretation of the warranty, which narrows the inquiry to this: In the case of a general warranty against warping, excepting warping from certain causes, is the burden on the buyer to prove that warping did not result from an excepted cause, or is the burden on the seller to prove the exception? I think the burden is on the seller which leads to the conclusion that the warranty was breached, unless the defendant has shown that the warping of any of the doors resulted from one or more of the excepted causes.

But, as has been said, the cause or causes of the warping are conjectural. Plaintiff's attorneys have argued earnestly that the Blanford letter of June 23, 1955, listing the 104 doors that were replaced, includes 21 doors which had jambs out of plumb which caused the warping. While no doubt warping caused by poor workmanship of defendant would not amount to breach of war-

ranty, the proof is inconclusive that the condition of the jambs caused the particular 21 doors to warp. Plaintiff has not carried the burden of proof in that respect, and the proof shows a breach of the warranty as to the 104 doors replaced.

As to the measure of defendant's damage, the written warranty provides: "The manufacturer agrees to repair or replace in the white, without charge, any door found to be defective within the meaning of this guarantee."

"The parties to a sales contract may by express stipulation limit liability of the seller on his warranty, either as to the remedy or as to the conditions precedent to any accrual of rights thereunder, and effect will be given by the courts to such limitation." 46 Amer. Jur. § 712, citing annotations 50 L.R.A., N.S., 753, 774, and L.R.A.1915B, 1131.

Such a limitation on liability has an appeal similar to the considerations supporting the interpretation of the implied warranty against warping from other than the excepted causes; for after the doors were installed and were in use for almost two years, it would be practically impossible for plaintiff to prove that the causes of warping stemmed from the responsibility of the buyer or third persons.

It is, therefore, my opinion that plaintiff is liable to defendant on its counterclaim for the value of the 104 defective doors, less their salvage value, fixing defendant's damages at $476.68. It being undisputed that defendant paid $3,999.14 on an undisputed claim of $6,431.44, after offsetting the counterclaim, the balance of principal now owing by defendant to plaintiff is $1,955.62.

The question of interest depends on the law of the forum so found in Tappan & Noble v. Harwood, 2 Speers, S.C., 536. The same rule is set out in Annotations in 3 A.L.R. 809, supplemented in 89 A.L.R. 678. In the latter annotation the case of Hansen v. Covell, 218 Cal. 622, 24 P.2d 772, 89 A.L.R. 670, reviews in some detail the rules as to interest on a liquidated claim as compared with an unliquidated claim.

Where an unliquidated claim is not an offset or in the nature of payment on the liquidated claim, then the counterclaim does not prevent interest on the entire liquidated sum. San Diego Fruit & Produce Co. v. Elster, 127 Cal.App.2d 80, 273 P.2d 70. The holder of a liquidated claim is therefore only entitled to interest on the amount of which he has been deprived of the use during the period of default. Mall Tool Co. v. Far West Equipment Co., 45 Wash.2d 158, 273 P.2d 652.

The plaintiff, as the holder of a liquidated claim, is entitled to interest on the balances found to be due, but I think defendant should have a credit thereof as of December 14, 1955, in the amount of the damages awarded the defendant for breach of the contract of warranty. Hansen v. Covell, supra; Maslow Cooperage Corp. v. Weeks Pickle Co., 270 Wis. 179, 70 N.W.2d 577; Rubel v. Rubel, 221 Miss. 848, 75 So.2d 59.

Plaintiff is entitled to interest on $6,-431.44 from August 12, 1955, to December 14, 1955, in the sum of $129.67. Crediting the principal sum of $476.68 as of December 14, 1955, plaintiff is also entitled to interest on the balance of $5,954.76 from December 14, 1955, to July 20, 1956, in the sum of $214.20, upon which interest in the sum of $16.50 paid by defendant on July 20, 1956, must be credited, leaving $197.70 for the period in question. Crediting the principal sum of $3,999.14 paid July 20, 1956, leaves a principal balance of $1,955.62 upon which interest will accrue from July 20, 1956, to the date of this order. Judgment should therefore be entered against the defendants Cecil's Incorporated and National Surety Corporation accordingly, and

It is so ordered.